SANDRA CABRINA JENKINS, Judge.
11 Defendant, Leonardo German, appeals his convictions and consecutive sentences for attempted aggravated rape, simple kidnapping, aggravated battery, and aggravated burglary. In the six assignments of error presented to this Court on appeal, defendant raises the issues of sufficiency of evidence; denial of due process for failure to appoint a sanity commission; denial of right to fair trial; double jeopardy; and ineffective assistance of counsel.[1] Finding no patent errors in the record and no merit to any of defendant’s assignments of error, we affirm his convictions and sentences.
STATEMENT OF THE CASE
On May 27, 2009, Leonardo German was charged by grand jury indictment with one count each of aggravated rape, a violation of La. R.S. 14:42; simple kidnapping, a violation of La. R.S. 14:45; aggravated battery, a violation of La. R.S. 14:34; and *185 aggravated burglary of an inhabited dwelling, a violation of La. R.S.14:60.
On July 6, 2009, defendant appeared at arraignment with his court appointed counsel and he entered pleas of not guilty to all charges. On September 15, 2010, |2the trial court granted defense counsel’s motion to withdraw as counsel of record and ordered the public defender to assign new counsel.[2] On March 15, 2011, the trial court held a hearing on defendant’s motion to suppress confession statement. The trial court took the matter under advisement and denied the motion to suppress confession statement on April 19, 2011. On September 1, 2011, defendant’s second court appointed attorney was allowed to withdraw as counsel and, on October 14, 2011, a third attorney, Mr. Juan Labadie, was appointed to represent defendant.[3] Mr. Labadie made his first appearance in this matter on November 8, 2011, and motions were set for December 15, 2011. On that date, defense counsel appeared with defendant and after all remaining motions were satisfied the case was set for trial on February 7, 2012.
The day before trial, February 6, defense counsel filed a motion to appoint a sanity commission and, on February 7, made an oral motion for continuance. The trial court denied both motions, defense counsel objected to the trial court’s rulings and applied for writ of review with this Court on the same day. This Court de-dined to exercise its supervisory jurisdiction and denied the writ.[4]
This case proceeded to trial on February 8, 2012, and the twelve-person jury found defendant guilty of the lesser responsive verdict of attempted aggravated rape and guilty as charged for simple kidnapping, aggravated battery, and | .-¡aggravated burglary. Defendant filed a motion for new trial that was denied on May 8, 2012. On May 15, 2012, the trial court sentenced defendant to serve consecutive sentences of forty-five years without probation, parole or suspension of sentence for attempted aggravated rape, four years for simple kidnapping, eight years for aggravated battery and twenty-eight years for aggravated burglary. Defense counsel objected to the sentences and noticed its intent to appeal. This appeal followed.
STATEMENT OF FACTS
At trial, Richard Mickey Gibbons testified that in April 2009 he owned rental properties on Scarsdale Road in Plaque-mines Parish. The victim, S.R.,[5] lived in one of Mr. Gibbon’s apartments at 137 Scarsdale Road with her fiance. The defendant, Mr. German, lived in another of Mr. Gibbon’s apartments at 3833 Highway 39. The two apartments are located at the intersection of Scarsdale Road and Highway 39, one facing Scarsdale Road and the other facing Highway 39.
*186 Mr. Gibbons testified that, on the evening of April 26, 2009, he received a phone call from S.R.’s fiance that prompted Mr. Gibbons to check in on S.R. at her apartment. When he got to the apartment, Mr. Gibbons saw that windows had been broken out in the door, that the house appeared to have been broken into, and S.R. was nowhere in the apartment. At that time, Mr. Gibbons called the Plaquemines Parish Sheriffs Office.
Deputy Kevin Bryan testified that he responded to a call for service reporting a residential burglary on Scarsdale Road. He spoke with Mr. Gibbons and inspected the residence at 187 Scarsdale Road. Deputy Bryan then asked Mr. |4Gibbons if he knew where the residents were and Mr. Gibbons stated that the fiance was at work and S.R. was “at the house on the front of the lane.” Deputy Bryan and Deputy Craig Hudson went to that location, knocked on the door, and announced “Sheriffs Office.” A female opened the door and ran out screaming that the man inside had a gun and was trying to kill her. Deputy Bryan stated that she was hysterical, crying, and shaking. Another deputy was called over for assistance, and the female was escorted across the street and kept behind police units for safety. Following procedures for armed and barricaded individuals, the deputies made notifications to the Sheriffs Office and the Special Response Team (SRT), set up a perimeter around the location, and waited for backup.
Plaquemines Parish Narcotics Agent Ryan Martinez testified that he was a member of the SRT that responded to an incident on April 26, 2009 on Scarsdale Road. He and another SRT member arrived at the scene first and were advised to get on their gear and watch the rear of the residence on Highway 39 to make sure no one fled from the rear of the home. Agent Martinez testified that between 3:00 and 3:30 a.m. he observed an individual, draped with a sheet over his/her head, walking quickly from the residence. Agent Martinez and another SRT member gave loud verbal commands telling the individual to get on the ground and place his hands behind his back. The individual complied and Agent Martinez detained the individual.
During his testimony, Agent Martinez identified defendant as the individual detained on the night of the incident. Agent Martinez testified that he did not advise defendant that he was under arrest, he did not question or attempt to question defendant, and defendant made no statement to him. He did not recall | ¡¡whether defendant was advised of his rights at that time. Defendant was transferred to the custody of one of the uniformed patrol deputies on the scene.
On the night of this incident, the victim, S.R., gave a written statement to the Plaquemines Parish Sheriffs Office about the events of that night. S.R. also gave an audio-recorded statement to Det. Mary McClendon on April 27, 2009, and she testified at trial. S.R. testified she had lived at 137 Scarsdale Rd. with her fiance in April 2009. She knew defendant as a neighbor, had talked with him in the previous four or five months prior to the incident, and that defendant had given her a ride to the Dollar Store on occasion. S.R. testified that her relationship to defendant never extended beyond neighbors and she never had any sexual relationship with him.
S.R. testified that on April 26, 2009, she was at her apartment and talking on the phone with her fiance at approximately 9:00 p.m. She stated that she heard a loud knock on the door and she called out “Just a minute.” She testified that she told her fiance that defendant was at the door and it sounded like he was kicking the door. *187 She stated that she called out to defendant saying “What do you want?” and defendant yelled at her, “Open the door, you bi — She called out to defendant saying she was going to call the landlord and ended the call with her fiance. She stated that defendant went around to her other door, (what she considered her front door) broke through the window pane in the door with a gun, reached in and unlocked the door. She testified that defendant came into her apartment with the gun, threw her down, and told her he was going to kill her.
S.R. stated that defendant dragged her out of her apartment through the grass and into one of the nearby unoccupied apartments. She stated that it was dark inside and she could not tell if defendant put her on a bed or couch, and “he just | fikept beating me and telling me to do things.” When asked what defendant was telling her to do, she stated that he told her to “suck his anaconda” referring to his penis. She stated that he told her to open her mouth; defendant pushed the gun into her mouth and chipped her teeth. She stated that defendant told her to .bite his neck and his nipples, and she did this so that he would stop hitting her. But defendant did hit her again with the gun and said he would kill her. She testified that she was scared for her life, particularly when she saw him pull back on the gun and heard it click.
S.R. thought the ordeal in that unoccupied apartment lasted about 20 minutes. At some point, defendant took her out of that apartment and stated that he wanted her to go to his truck. But defendant could not find his keys so he took her to his apartment. While in his apartment, she stated that defendant undressed. She testified that she knew defendant had a roommate but he did not come out of his room. Defendant had gotten another gun, a silver one, and held it to her side while he put the first gun to her mouth and told her to open her mouth. She told him she needed to use the bathroom. She testified that defendant went with her to the bathroom, she pulled down her pants, and he told her to sit there and shut up. Then he hit her with the gun and dragged her back to his room. She stated that he again told her to “suck his anaconda.”
At some point, S.R. heard the Plaque-mines Parish Sheriffs Office beating on the door and saw a light through the window. She stated that defendant dragged her by the refrigerator right beside his apartment door; defendant put a gun to her side and told her to “Be quiet.” She testified that she took a chance to get away from him, ran and opened the door, whereupon an officer grabbed her and took her away from the apartment. She stated she told the officer that defendant had a gun.
17Puring her testimony, S.R. identified several photographs depicting her injuries, taken by Det. McClendon on the day after the attack. She identified her black and bruised eyes, a place where he hit her with the gun behind her ear, a spot where she stated that he burnt her with a cigarette, and a photo of her chipped tooth. Det. Mary McClendon also testified that she personally observed these injuries while taking the photographs. Det. Mary McClendon held an audio-recorded interview with S.R. on April 27, 2009. S.R.’s recorded interview and her written statement from the night of the attack were also introduced at trial. When asked on cross examination if she were making up this story, S.R. replied “No,” but she could not explain why no gun or guns were ever found.
Detective Brett Ricks of the Plaque-mines Parish Sheriffs Office testified that he responded to the scene on April 26, *188 2009, originally as a member of the SRT unit. After defendant was taken into custody, Det. Ricks became a designated detective on the scene. Det. Ricks testified that he spoke with the victim at the scene about the sequence of events of the incident and that the victim showed detectives where defendant had taken her. Det. Ricks obtained a consent-to-search from Mr. Gibbons for the apartments at 137 Scarsdale Rd. and 115 Scarsdale Rd.
Det. Ricks identified several photographs taken at the victim’s apartment, 137 Scarsdale Rd., at the unoccupied apartment, 115 Scarsdale Rd., and in the areas outside the apartments. One of the photographs depicted a .45 caliber live cartridge that was collected as evidence at 115 Scarsdale Rd. He testified that when they found the cartridge in the unoccupied apartment, they collected it as evidence, “because of what she explained how he racked the weapon back and stuck it in his [sic] face and told her to suck his di — .” He explained that if there was a bullet in the magazine of the gun and the gun was racked back it would have | «ejected a live cartridge. Det. Ricks also identified photographs of a woman’s earring and a red baseball cap on a mattress in the dark, unoccupied apartment. Another photograph depicted what appeared to be blood on the wall by the mattress. Det. Ricks testified that he originally assumed that the blood on the wall was the victim’s, though he had not observed any open, bleeding wounds on her that night. When the blood was tested by a crime lab, the blood was identified to be the defendant’s.
Det. Ricks also testified that he participated in the interview of defendant on the morning of April 27, 2009. He stated that the interview occurred at the Detective Bureau in Belle Chasse, and Det. Harvey was the lead on the interview.
Det. Patrick Harvey testified that on the evening of April 26, 2009, he was informed by his supervisor that Det. Ricks was conducting an on scene investigation. Det. Harvey stated that at about 2:00 a.m. on April 27, Det. Ricks contacted him and advised that search warrants and arrest warrants were needed in this investigation. Det. Harvey stated that defendant had been taken into custody at 3:24 a.m., before he (Det. Harvey) arrived on scene. Det. Harvey spoke with the victim and walked through the scene with her. Det. Harvey was present when photographs were taken at the scene. Det. Harvey observed the broken windows in the door at the victim’s apartment, the interior of the unoccupied apartment, and the victim’s injuries.
Later that morning, Det. Harvey returned to the Detective Bureau to conduct an interview with defendant. The interview began at 10:21 a.m. on April 27, 2009, and it was audio recorded and later transcribed. Det. Harvey started the interview by advising defendant of his Miranda rights. He asked defendant if he understood his rights, to which defendant responded “Yes.” Defendant also responded “Yeah 19my brother” when asked if he was willing to speak with the detectives and would sign a waiver of his rights before talking with the detectives. Det. Harvey then began questioning defendant about what happened the night before, around 9:30-10:00 p.m.
Defendant stated that “the girl” S.R. would not leave him alone that night. He stated that she got some wine or she bought a bottle of something and drank it at her apartment and then she came over to his apartment drunk. Defendant said that S.R. came over and pushed and hit him at his apartment, and that she wanted defendant to take her to Houston. Defendant stated that he tried to get her to *189 leave but she would not leave him alone. Defendant said he did not cause any trouble, but that she was like a dog looking for him.
Defendant stated that S.R. wanted to have sex with him and he stated that they had had sex the day before but not the day of the incident. On the night in question, defendant stated that S.R. kept coming over and they argued because he just wanted her to leave him alone. At one point, defendant admitted that he hit S.R. He stated he hit her once with his hand but she had hit him four or five times. When asked if he had been drinking, defendant stated that he and her were drinking together but he was not too drunk. Later in his statement, defendant stated that he drinks about a case of beer every day and that he was drunk that night.
At trial, Det. Harvey testified about defendant’s statement. The audio-recorded interview was introduced, along with a transcription of the interview, and the interview was played for the jury. In his statement, defendant denied several times that he owned any type of gun. He stated that his roommate had a brown .22 rifle, but that defendant did not have a gun. At one point, Det. Harvey asked him if 1 indefendant ever went to her apartment last night and broke the windows in the door and took her out of her apartment. Defendant stated, “I remember now ... because the front window .. I break the front window.” Det. Harvey asked again, “You broke the front window” and defendant responded, “Yeah, while I was there, yeah.” Det. Ricks asked defendant why the victim would lie and write a six-page statement about what happened, and he told defendant that the evidence supported what the victim told them. Defendant replied, ‘Yeah, a bunch she says is right.”
Defendant stated over twenty times during the interview that he did not have a gun. Defendant stated that the “old man” had some rifles. Then Det. Ricks said he was talking about a pistol, and defendant finally stated, “Yeah, I got a little pistol somewhere.” However, defendant then said it was a .22 pistol and that he had it in Houston. When detectives asked further questions about a gun, defendant began to talk about the police bringing gun charges and asked the detectives if they would help him out. Det. Ricks explained to defendant that, “we can tell the District Attorney’s office that you were honest with us. That’s all we can do.” Soon after that explanation, defendant stated, “I had the gun in my hand throw away.” Defendant explained that he did not remember where exactly he threw the gun, but he threw it somewhere in the high grass or wooded area by the apartments. When asked whose gun it was, defendant said he got it from “Jimmy” in St. Bernard who owed him money. Jimmy gave him the gun instead of the money he owed defendant. Defendant stated to Det. Ricks that the gun was like the one he (Det. Ricks) had, to which Det. Ricks replied: “The Glock?” Defendant replied affirmatively. Detectives then had defendant mark, on a hand drawn sketch of the area where defendant lived, where he had thrown the gun.
In At trial, Det. Harvey testified that the detectives were never able to locate a gun in the area where defendant indicated he had thrown the gun. No gun(s) were ever collected as evidence in connection with this case. Det. Harvey stated that the interview with defendant lasted approximately one hour and seventeen minutes. The audio-recorded interview, along with a transcription of the interview, was introduced into evidence and played for the jury.
At the conclusion of trial, the jury returned verdicts of guilty of attempted aggravated rape, guilty of simple kidnapping, *190 guilty of aggravated battery, and guilty of aggravated burglary of an inhabited dwelling.
DISCUSSION
Finding no patent errors in our review of the record, we turn to defendant’s assignments of error. Defendant raises two counseled and four pro se assignments of error relating to his trial and convictions. He raises no assignments of error relating to his sentences. In his second assignment of error, defendant raises the issue of sufficiency of the evidence to support his convictions. When issues are raised on appeal as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Marcantel, 2000-1629, p. 8 (La.4/3/02), 815 So.2d 50, 55, citing State v. Hearold, 603 So.2d 731, 734 (La.1992).

Sufficiency of Evidence

This court set forth the applicable standard of review for sufficiency of the evidence in State v. Huckaby, 2000-1082, p. 32 (La.App. 4 Cir. 2/6/02), 809 So.2d 1093, 1111 (quoting State v. Ragas, 98-0011, pp. 13-14 (La.App. 4 Cir. 7/28/99), 744 So.2d 99, 106-107), as follows:
11?In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green; supra. “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
“The testimony of a single witness, if believed by the trier of fact, is sufficient to support a conviction.” State v. Wells, 2010-1338, p. 5 (La.App. 4 Cir. 3/30/11), 64 So.3d 303, 306. The reviewing court does not reweigh the credibility of witnesses when reviewing sufficiency of evidence claims. State v. Rosiere, 488 So.2d 965, 968 (La.1986). A factfinder’s decision con *191 cerning the credibility of a witness will not be disturbed unless it is clearly contrary to the evidence. State v. James, 2009-1188, p. 4 (La.App. 4 Cir. 2/24/10), 32 So.3d 993, 996.
Defendant was convicted of attempted aggravated rape, a violation of La. R.S. 14:(27)42; simple kidnapping, a violation of La. R.S. 14:45; aggravated | isbattery, a violation of La. R.S. 14:34; and aggravated burglary of an inhabited dwelling, a violation of La. R.S. 14:60. We have reviewed the elements of each offense and, viewing the testimony and evidence submitted at trial in a light most favorable to the State, have determined that the evidence is sufficient for a finding of guilt beyond a reasonable doubt as to each offense.
The pertinent elements of attempted aggravated rape are the specific intent to commit anal, oral, or vaginal sexual intercourse with a person without that person’s lawful consent, where the offender does an act for the purposes of and tending directly to accomplish one or more of those acts of intercourse, and when the act is committed under certain aggravating circumstances: when the victim resists the act to the utmost, but whose resistance is overcome by force; or when the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution; or when the victim is prevented from resisting the act because the offender is armed with a dangerous weapon. La. R.S. 14:27; La. R.S. 14:41; La. R.S. 14:42.
First, as to whether defendant attempted to commit the act of rape upon the victim, S.R. testified that defendant broke into her apartment armed with a gun and took her by force, -with threats of killing her, from her apartment into an unoccupied apartment where defendant told her to “suck his penis.” In her written statement and statement to Det. McClendon, S.R. stated that she was forced by defendant to have oral intercourse:. At trial, when asked if defendant put his penis in her mouth while using force and armed with a weapon, S.R. stated yes. S.R.’s testimony was consistent with her previous statements about the events of that night, particularly defendant’s threats and commands to “suck his penis.”
|14S.R. testified that she suffered injuries from defendant hitting her multiple times with the gun and shoving the gun into her mouth. Photographs taken by Det. McClendon and medical records from the hospital corroborate S.R.’s testimony about the injuries she suffered during the attack, including bruising all over her face, a swollen and bruised lip and a chipped tooth.
As to the aggravating circumstances, S.R. testified that defendant was armed with a gun during the entire incident. While in the unoccupied apartment, S.R. testified that defendant threatened her life, put the gun in her mouth, he pulled back on the gun and she heard the gun click. She stated that defendant told her to “suck his penis” while armed with the gun. Det. Ricks testified that during the search of that apartment, a live .45 caliber bullet was found on the bed. Det. Ricks explained that the act of pulling back on the gun or racking the gun could have ejected the live round and accounted for the evidence found and collected at the scene. Although not conclusive that defendant had a gun as stated by S.R., this evidence could corroborate her testimony that defendant was armed with a gun.
Even in the absence of physical evidence, a victim’s testimony establishing all of the required elements of the offense of attempted aggravated rape can be sufficient to support a conviction. State v. Carney, 476 So.2d 364, 368-69 (La.App. *192 4th Cir.1985). In this case, viewing the evidenee and testimony in a light most favorable to the prosecution, we find that rational jurors could have found all the elements of attempted aggravated rape by oral sexual intercourse while armed with a dangerous weapon present beyond a reasonable doubt.
On defendant’s conviction for simple kidnapping, the elements are the intentional and forcible seizing and carrying of any person from one place to another without his consent. La. R.S. 14:45. Under the simple kidnapping statute, |ia“the distance traversed is immaterial.” State v. Bertrand, 247 La. 232, 170 So.2d 386, 388 (1964).
S.R. testified that defendant broke windows out in her apartment, forced his way in and took her by force and threats of killing her out of her apartment into, at first, the unoccupied apartment and then into his apartment. At all times, S.R. testified that she feared for her life and did not go with him voluntarily. Mr. Gibbons testified that when he arrived at her apartment it appeared that it had been broken into and he stated that S.R. was not in the apartment. His suspicions of a crime were aroused enough to call the police to the scene. The photographs from the scene of her apartment show broken windows in the door and glass inside on the floor. Considering the testimony of S.R. and Mr. Gibbons and the photographs of the scene, we find that rational jurors could conclude that defendant committed the offense of simple kidnapping beyond a reasonable doubt.
As to the conviction for aggravated battery, the elements of an aggravated battery are the intentional use of force or violence upon the person of another with a dangerous weapon. La. R.S. 14:33; La. R.S. 14:34. S.R. testified that defendant had a gun when he broke into her apartment and he struck her with the gun and kicked her before dragging her out of the apartment. She also testified that he hit her with the gun several more times throughout the ordeal, while inside the unoccupied apartment, at 115 Scarsdale Road, and inside his apartment, at 3833 Highway 39. She testified that defendant hit her multiple times in the face, head, and behind her ear and that her tooth was chipped when he forcibly put a gun in her mouth. Det. McClendon testified that she took the photographs of S.R.’s injuries on April 27, 2009 and that she personally observed the bruises on the victim’s face, “all over her head,” a busted lip and what appeared to be a chipped | ifitooth. Considering the witness testimony and photographic evidence, in the light most favorable to the prosecution, we find that rational jurors could have found all the essential elements of the offense of aggravated battery beyond a reasonable doubt.
Lastly, for defendant’s conviction on aggravated burglary of an inhabited dwelling, the elements consist of the unauthorized entry into an inhabited dwelling where a person is present, with the intent to commit a felony or theft therein, and where the offender is armed with a dangerous weapon; or commits a battery upon any person while in such place, or in entering or leaving such place. La. R.S. 14:60.
S.R. testified that she was on the phone with her fiance when she heard defendant knocking on the door and she told her fiance to wait a minute while she checked to see what defendant wanted. She stated that defendant began kicking at the door and when she called out to ask what he wanted, he yelled through the door, “Open the door, you bi—.” S.R. testified that she said she would call the landlord but before she could call anyone else, defen *193 dant broke the glass window in the front door, reached in, and unlocked the door. He entered into her apartment holding a gun, approached her, and kicked her dog out of the way as it was trying to bite defendant. S.R. stated that defendant threw her down and threatened to kill her before dragging her out of her apartment and into the nearby unoccupied apartment.
Det. Ricks identified the photographs taken of her apartment that showed the broken window in the door to her apartment and the broken glass on the inside of the door, consistent with her statements. During defendant’s statement, introduced at trial, to Det. Ricks and Det. Harvey on April 27, 2009, he admitted that he broke |17a window at S.R.’s apartment. Viewing the evidence and witness testimony, we find that any rational juror could find that defendant did commit the offense of aggravated burglary of an inhabited dwelling beyond a reasonable doubt.
Finally, defendant argues that there was not sufficient evidence to support his convictions because the victim’s testimony was contradicted by the absence of physical evidence. Defendant correctly points out that no gun was recovered in the case, and that only defendant’s blood was found on the wall in the unoccupied apartment where defendant allegedly beat her with a gun. However, the testimony of any one witness, if believed by the trier of fact, can provide sufficient support for a finding of guilt. A gun may not have been recovered, but the victim’s testimony is corroborated by the photographs of the scene, her injuries, and the testimony of the other witnesses. The witness testimony and documentary evidence in this case, including photographs and medical records, provide sufficient evidence for rational jurors to find defendant guilty of each offense beyond a reasonable doubt.
After reviewing the evidence and testimony from the trial, we find the evidence was sufficient to support defendant’s convictions for attempted aggravated rape, simple kidnapping, aggravated battery and aggravated burglary of an inhabited dwelling. We find no merit to this assignment of error.

Motion to Appoint Sanity Commission

In his third pro se assignment of error, defendant argues that the trial court’s ruling denying the defense motion to appoint a sanity commission to examine defendant prior to trial denied him due process of law. On the morning that the trial was set to commence, February 7, 2012, the trial court heard arguments on the defense motion to appoint a sanity commission filed the day before, on February 6, |lsand an oral motion for a continuance made by defense counsel on the morning of trial.[6] The trial court denied both motions and gave oral reasons for its ruling. The defense counsel objected to the trial court’s ruling, noticed intent to seek writs, and filed a writ application with this Court on the same date. In connection with defendant’s writ application, the trial court submitted a per curiam detailing its reasons for denying defendant’s motion to appoint a sanity commission. This Court denied defendant’s writ on the showing made and we now consider this assignment of error in light of the entire record.[7]
 The prosecution of a defendant who lacks mental capacity to understand the nature and object of proceedings against him, or to assist in his defense, violates the right of due process of law. Drope v. Missouri, 420 U.S. 162, 172, 95 *194 S.Ct. 896, 904, 43 L.Ed.2d 103 (1975). “Mental incapacity to proceed exists when, as a result of mental disease or defect, a defendant lacks the capacity to understand the proceedings against him or to assist in his defense.” La.C.Cr.P. art. 641. Determining a defendant’s mental competency to proceed depends on “whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him.” Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960).
The issue of mental incapacity to proceed may be raised at any stage of the proceedings; the burden lies with the defendant to establish that he lacks the capacity to understand the proceedings against him and that he is unable to assist | i3with his defense in a meaningful way. State v. Bickham, 404 So.2d 929, 934 (La.1981). Under La.C.Cr.P. art. 642, when the question of defendant’s mental capacity is raised, “there shall be no further steps in the criminal prosecution, except the institution of prosecution, until the defendant is found to have the mental capacity to proceed.” However, “[t]he fact that the defendant’s capacity to proceed is called into question does not, for that reason alone, require the trial court to order a mental examination of the defendant; rather it must have reasonable grounds to doubt the defendant’s capacity.” State v. Robinson, 92-1057 (La.App. 1st Cir.5/5/95), 655 So.2d 517, 519; La.C.Cr.P. art. 643; Bickham, supra, 404 So.2d at 935; State ex rel. Seals v. State, 00-2738, p. 5 (La.10/25/02), 831 So.2d 828, 832.
Defense counsel’s motion to appoint a sanity commission cannot rest on mere allegations without supporting evidence to show that a defendant is unable to understand the nature of the proceedings. Bickham, 404 So.2d at 935. The determination of whether there are reasonable grounds to doubt a defendant’s mental capacity and to order a mental examination lies within the discretion of the trial court and the trial court’s determination will not be set aside absent a clear abuse of discretion. Id., 404 So.2d at 934; State v. Gauthier, 07-0743, p. 10 (La.App. 4 Cir. 3/12/08), 978 So.2d 1161, 1168.
In the motion to appoint sanity commission, filed on February 6, 2012, defense counsel did not allege any specific facts in support of the motion. In arguments before the trial court, defense counsel stated that, in discussing a possible plea deal with defendant, he became concerned about defendant’s ability to understand his sentencing exposure if convicted of the charged offenses or lesser responsive offenses. Defense counsel spoke with defendant, within ten days orj^two weeks prior to trial, about the possibility of accepting a plea deal. Defense counsel represented to the court that he spoke to defendant for approximately an hour or hour and a half, and he found that defendant had no problem discussing the facts of the case. However, defense counsel also found that defendant was focused on the fact that the State had no gun in evidence and thought he could not be found guilty of any charges involving a gun. Defense counsel stated that he tried to explain to defendant about lesser responsive verdicts that the jury might return and that any of the convictions could result in a considerable sentence of imprisonment, even assuming he was not convicted of the charge of aggravated rape, the most serious offense charged that carries a mandatory life sentence. Defense counsel represented to the trial court that defendant became quiet, and defense counsel perceived this to mean that defendant did not understand the issue of lesser included offenses and the *195 possibility of considerable sentences if found guilty on these charges.
After speaking with defendant, defense counsel contacted the State and inquired whether any of defendant’s previous attorneys had raised the issue of defendant’s mental capacity to proceed. The State advised defense counsel that neither of defendant’s two previous attorneys had raised the issue. At that point, defense counsel decided to file a motion to appoint a sanity commission.
Defense counsel represented to the trial court that he believed filing a motion to appoint a sanity commission pursuant to La.C.Cr.P. art. 642 mandated a halt to the prosecution of the case until the issue of sanity is addressed, a mental examination of defendant is conducted, and defendant’s competence to proceed is determined. Defense counsel further represented to the court that, prior to being informed by the State that morning, he did not know that the trial court, within its |2i discretion, may deny a motion for sanity commission if it is not satisfied that there are sufficient and reasonable grounds for such procedure. Defense counsel argued, however, that he had presented sufficient and reasonable grounds for granting the motion to appoint a sanity commission to determine defendant’s mental capacity to proceed.
The State argued that defense counsel had not met the burden of showing that defendant suffered from a mental disease or defect that would affect his ability to understand the proceedings against him and participate in his defense. Rather, the State argued, defense had only claimed that defendant did not understand the “reality” of the' case against him. The State cast doubt on the claim that defendant could not understand the proceedings against him and suggested that defendant was manipulating the system. The State highlighted several facts regarding defendant’s involvement with his own case over the two years prior to the trial date: defendant had made numerous court appearances and never indicated any difficulty in understanding the nature of the proceedings; the trial court had previously found that defendant understood English when it denied his motion to suppress the statement; neither of defendant’s prior two defense attorneys had raised the issue of defendant’s mental capacity; defendant, on his own behalf, had filed a pro se civil suit in federal court against the District Attorney’s Office, the Sheriffs Office, and his first defense counsel; and defendant had written, presumably in his own hand, subpoenas for certain records, including cell phone and credit card records.
|22In denying defendant’s motion to appoint a sanity commission, the trial court set forth detailed reasons, orally and in a per curiam,[8] The trial court acknowledged that defendant’s native language is Spanish and it appointed an interpreter to be present at each trial court hearing after receiving a handwritten letter from defendant, in September 2009, asking the trial court for an interpreter. The trial court also noted that two of defendant’s representatives, including his present counsel, spoke fluent Spanish. The trial court then recited the history of defendant’s representation by three appointed counsel and one co-counsel and stated that none of the previous defense counsel had raised any concern that defendant was unable to understand or participate in the proceedings against him. The trial court stated that it had observed defendant during several court appearances, observed defendant speaking English to other people, and reviewed several court filings written and submitted by defendant on his own behalf.
*196 The trial court’s per curiam cited the law and facts upon which it based its decision to deny the appointment of a sanity commission. It cited Louisiana jurisprudence and the Official Revision Comments to La.C.Cr.P. art 643 stating that the ordering of a mental examination as to the defendant’s capacity to proceed rests in the sound discretion of the court and there must be sufficient evidence to raise doubt as to such capacity. See State v. Anderson, 06-2987, p. 21 (La.9/9/08), 996 So.2d 978, 992. The trial court also reviewed its own observations and communications with defendant throughout the case proceedings. The trial court found that defendant understood the proceedings against him and had not demonstrated any mental incapacity such that he would be unable to assist in his defense.
⅛⅛ our review of the record, we find no abuse of discretion in the trial court’s denial of defense counsel’s motion to appoint a sanity commission. The record includes handwritten filings purportedly written and submitted by defendant that demonstrate defendant’s active engagement and understanding of the criminal proceedings against him in this case. We have also reviewed the statement given by defendant to the police on April 27, 2009. Prior to making any statements, the detectives read defendant his constitutional rights and asked defendant if he understood those rights. Defendant stated “Yes” and stated “Yeah, my brother” when asked if he was willing to speak with the detectives. Throughout his interview with detectives, defendant answered questions in detail about the incident in question. Both Det. Ricks and Det. Harvey testified at the motion to suppress hearing on March 15, 2011, that defendant had no trouble understanding why he was being questioned. During his statement to the detectives, they informed him that the District Attorney’s office would make the decision about what charges defendant would face and he indicated that he understood that. Even if defendant may not have grasped the fact that he could still be found guilty on the criminal charges against him without a gun in evidence, such misunderstanding does not by itself provide reasonable grounds to establish mental incapacity to understand the proceedings and assist in his case. Defendant has not shown the existence of any mental defect or disease or any mental incapacity that could affect his ability to understand or assist in the proceedings. State v. Carter, 10-0614, p. 22 (La.1/24/12), 84 So.3d 499, 518. Considering the record before us and the reasoning of the trial court, we find no abuse of discretion in the trial court’s judgment denying the appointment of a sanity commission.
We find no merit to this assignment of error.

124Motion to Continue

In defendant’s first counseled and first pro se assignment of error, he argues he was denied the right to a fair trial when the trial court denied defense counsel’s oral motion for continuance on February 7, 2012, the morning the trial was scheduled to commence.
Generally, a motion for continuance shall be in writing and specifically allege the grounds upon which it is based, and it shall be filed at least seven days prior to the commencement of trial. La. C.Cr.P. art. 707. However, upon written motion at any time and after contradictory hearing, a trial court may grant a continuance upon a showing that granting the motion is in the interest of justice. Id. An oral motion for a continuance is permitted when the grounds that allegedly made the continuance necessary arose unexpectedly. State v. Dangerfield, 2000-2359, p. 7 (La.App. 4 Cir. 4/3/02), 816 So.2d 885, 893.
*197 The trial court is vested with considerable discretion in ruling on a motion for continuance, and the reviewing court will not disturb the trial court’s ruling absent a clear abuse of discretion. State v. Brown, 12-0626, p. 16 (La.App. 4 Cir. 4/10/13), 115 So.3d 564, 575; State v. Reeves, 06-2419, p. 73 (La.5/5/09), 11 So.3d 1031, 1078. When raised on appeal, the reviewing court should generally decline to reverse a conviction even on a showing of an improper denial of a motion for a continuance — absent a showing of specific prejudice. Reeves, 06-2419, p. 73, 11 So.3d at 1079.
More specifically, the denial of a motion for continuance on grounds of counsel’s lack of preparedness does not warrant a reversal unless counsel demonstrates specific prejudice resulting from the denial, or the preparation time is so minimal as to call into question the basic fairness of the proceeding. State v. Snyder, 98-1078, p. 33 (La.4/14/99), 750 So.2d 832, 856. The Louisiana Supreme Court has held that when preparation time is unreasonably short, counsel has been diligent, and there is a general allegation of prejudice, denial of a motion for a continuance is an abuse of discretion which may constitute reversible error. Snyder, 98-1078, p. 33, 750 So.2d at 856-857, (citing State v. Winston, 327 So.2d 380 (La. 1976)); State v. Simpson, 403 So.2d 1214 (La.1981).
In the instant case, defense counsel did not file a written motion for continuance but orally motioned the trial court for a continuance on the date set for trial. In his argument for the continuance, defense counsel represented to the court that he did not spend the weekend prior to trial preparing because he believed that his motion to appoint a sanity commission, filed the day before trial, would halt the proceedings and trial could not commence until after defendant’s mental capacity was determined. Defense counsel gave a lengthy explanation to the trial court for not being prepared for trial, in which he noted that, on February 2, he had informed the State of his intention to seek a continuance and the State strenuously objected because it had secured its key witness and was ready to proceed to trial. Nonetheless, due to his mistaken belief that filing a motion to appoint a sanity commission would halt the proceedings, defense counsel did not prepare for the set trial date of February 7, 2012.
The State objected to a continuance and argued the current defense counsel, Mr. Labadie, had been aware of the set trial date since December 15, 2011. The State noted that defense counsel was appointed in October, 2011, that the State provided open file discovery, and defense counsel stated that discovery had been satisfied on the date of the motions hearing, December 15, 2011, at which time the matter was set for trial on February 7, 2012. The State acknowledged that it had |2f,informed Mr. Labadie that it would ask the trial court for a continuance if it could not locate and secure the victim, S.R., in time for trial. The State then informed defense counsel, on February 2, 2012, that it had located the victim and was ready for trial. The State also noted that Sheriffs deputies had travelled to West Virginia to pick up and transport the victim, S.R., for trial.
The trial court gave oral and written reasons for denying defense counsel’s motion for continuance. The trial court noted that the present defense counsel, Mr. Labadie, had appeared in court on December 15, 2011, and stated that all motions had been satisfied and he had no further motions to file. At that time, the trial court set the case for trial on February 7, 2012, allowing the defense almost two months to prepare. The trial court noted *198 that defense counsel’s failure to prepare was primarily based on counsel’s misunderstanding of the law pertaining to the appointment of a sanity commission. However, the trial court found that defense counsel had ample time to prepare for trial since he was appointed as counsel in October, 2011.
The record indicates that defense counsel was appointed on October 14, 2011, and he made two court appearances on behalf of defendant prior to the date set for trial. On December 15, 2011, defense counsel appeared with defendant, a pretrial conference was held, and, on motion of the State, the trial was set for February 7, 2012. Defense counsel did not indicate to the trial court at any time, including in his argument on the motion to continue, that he had been prejudiced by any actions by the State. He acknowledged that the State informed him on February 2 that it had secured the presence of its witness for trial, was ready to proceed, and that the State would object to a continuance. Defense counsel represented to the trial court in its oral motion for continuance that he had intended | g7to spend the weekend prior to trial preparing, implying that he could have adequately done so. The only reason defense counsel did not prepare was his mistaken belief that simply filing a motion to appoint a sanity commission would automatically result in a stay of the proceedings. The trial court noted all of defense counsel’s arguments in its oral reasons and per curiam denying the motion for a continuance.
We further note that defendant, in his appeal, does not contend that any specific prejudice resulted at trial from the denial of the motion for continuance. From our review of the record, we find no indication that defense counsel was unprepared or uninformed about the case. Under these circumstances, we find no abuse of discretion in the trial court’s denial of defense counsel’s oral motion for continuance on February 7, 2012.
We find no merit to the two assignments of error relating to the denial of defense counsel’s motion for continuance.

Double Jeopardy

In his second pro se assignment of error, defendant contends that he was subjected to double jeopardy because three of the charged offenses for which he was convicted relied on the same evidence and course of conduct to prove the elements of each offense. Defendant argues that the evidence and conduct relied on to support a finding of guilt for attempted aggravated rape was the same relied on for his charges and convictions for aggravated battery and aggravated burglary. For the following reasons, we find defendant was not subjected to double jeopardy and there is no merit to this assignment of error.
Both the Fifth Amendment to the United States Constitution and Article 1, § 15 of the Louisiana Constitution guarantee that no person shall be twice placed in | ^jeopardy for the same offense. See also La.C.Cr.P. art. 591. “The Double Jeopardy Clauses of the federal and Louisiana constitutions not only prohibit successive trials for the same offense but also ‘protect[] against multiple punishments for the same offense.’ ” State v. Murray, 2000-1258, p. 3 (La.9/18/01), 799 So.2d 458, 454-55, (citing North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969)).
Louisiana courts use two separate tests to determine whether double jeopardy exists in a case: the Blockburger test and the same evidence test. State v. Gibson, 03-0647, p. 8 (La.App. 4 Cir. 2/4/04), 867 So.2d 793, 799; see Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Under the *199 Blockburger test, “where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two different offenses or only one, is whether each provision requires proof of an additional fact which the other does not.” Gibson, 03-0647, p. 9, 867 So.2d at 799; State v. Smith, 95-0061, p. 4 (La.7/2/96), 676 So.2d 1068, 1069. Under the same evidence test, if the evidence required to support a finding of guilt of one offense would also have supported conviction of the other, the two offenses are the same under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. Smith, 95-0061, p. 4, 676 So.2d at 1069-1070; State v. Steele, 387 So.2d 1175, 1177 (La.1980). The same evidence test depends on the evidence necessary for a conviction, not all of the evidence introduced at trial. Id.
“Louisiana courts have used both tests to evaluate claims of double jeopardy.” Gibson, supra, 03-0647, p. 9, 867 So.2d 793. In this case, we also apply both tests to evaluate defendant’s claim.
| ^Defendant contends that his convictions for attempted aggravated rape, aggravated battery, and aggravated burglary violate the constitutional prohibition on double jeopardy.
La. R.S. 14:27 defines attempt as follows:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
La. R.S. 14:41 defines rape as follows:
A. Rape is the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person’s lawful consent.
La. R.S. 14:42 defines aggravated rape as follows:
A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
(3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.
(4) When the victim is under the age of thirteen years. Lack of knowledge of the victim’s age shall not be a defense.
(5) When two or more offenders participated in the act.
(6) When the victim is prevented from resisting the act because the victim suffers from a physical or mental infirmity preventing such resistance.
La. R.S. 14:60 defines aggravated burglary as follows:
Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender,
(1) Is armed with a dangerous weapon; or
(2) After entering arms himself with a dangerous weapon; or
*200 (3) Commits a battery upon any person while in such place, or in entering or leaving such place.
La. R.S. 14:33 defines battery as follows:
| anBattery is the intentional use of force or violence upon the person of another; or the intentional administration of a poison or other noxious liquid or substance to another.
La. R.S. 14:34 defines aggravated battery as follows:
A. Aggravated battery is a battery committed with a dangerous weapon.
The elements required to prove each of these offenses do not necessarily overlap. Convictions for attempted aggravated rape and aggravated burglary can involve the offender being armed with a dangerous weapon, but only aggravated battery requires the element that the offender commits the battery with a dangerous weapon. Depending on the facts of the case, however, the elements required to prove aggravated battery could overlap with the elements required to prove aggravated burglary.
An aggravated burglary requires — in addition to proof of an unauthorized entry with the specific intent to commit a felony or theft therein — proof that the offender was (1) armed with a dangerous weapon; (2) armed himself with a dangerous weapon after entering or leaving such place; or (3) committed a battery upon any person while in such place, or in entering or leaving such place.
An offender could commit an aggravated battery while in the act of committing an aggravated burglary, and such aggravated battery could constitute proof of a necessary element of the offense of aggravated burglary — the committing of a battery upon any person while in the place. Under such scenario, where both a battery and burglary occurred during the same act or transaction, a plea of double jeopardy would bar the offender’s prosecution for both the | si aggravated burglary and the aggravated battery under both the Block-burger and same evidence tests.[9]
In the instant case, the victim, S.R., testified that defendant committed multiple acts upon her that took place in three separate locations. The bill of indictment charging defendant did not specify a location of the aggravated battery upon the victim but it did specify that defendant committed aggravated burglary of the dwelling, “belonging to Mickey Gibbons, located at 115 & 137 Scarsdale Road, Hwy 39, Braithwaite, LA, while armed with a dangerous weapon.” One of those locations, 137 Scarsdale Road, was the victim’s apartment, and the other was the unoccupied apartment where the victim stated defendant took her after kidnapping her from her apartment. The third location, 3833 Highway 39, is listed in the indictment as defendant’s address. The victim testified that defendant first kidnapped her from her apartment, then took her to the unoccupied apartment, and then took her to his apartment. The victim’s testimony as to the sequence of events and locations was consistent with what she described in her written statement and during her interview with Det. McClendon.
According to the victim’s testimony, defendant broke into her apartment at 137 Scarsdale Road armed with a dangerous weapon and he threw her down on the ground and threatened to kill her. Based on her testimony, the supporting testimo *201 ny of detectives, and the graphs of the scene, there was sufficient evidence to prove beyond a reasonable doubt that defendant committed an aggravated battery upon the victim during the commission of the aggravated |S2burglary of her apartment. Thus, in a single act or transaction at that location defendant perpetrated both an aggravated burglary and aggravated battery and he cannot be subject to indictment and conviction for both. Since the indictment also lists the second location, 115 Scarsdale Road, as a location at which defendant committed aggravated burglary, any battery with the dangerous weapon that occurred at that location would also be part of a single act or transaction.[10]
The victim also testified, however, that defendant took her from 115 Scarsdale Road to his apartment, at 3883 Highway 39. She testified that while at his apartment she asked to go to the bathroom and she recounted the following:
Victim, S.R.: “And when I got to the bathroom he let me pull my pants down and stuck the gun in my side and said, ‘Now, you sit here and shut up.’ He said, ‘Be quiet.’ And so I told him ‘Okay,’ and he hit me with the gun and wouldn’t let me pull my pants back up to go to the — back to his room.”
In defendant’s statement to Det. Harvey and Det. Ricks, introduced at trial, he admitted to hitting the victim while inside his apartment. Although he stated that he hit her with his hand, rather than a gun, the jurors determine the credibility of the witnesses and determine the weight of the evidence.
Based on the testimony and evidence presented, jurors could have found beyond a reasonable doubt that defendant committed separate offenses at different times and in different locations: an aggravated burglary at 137 Scarsdale Road; and, in a separate act, defendant committed an aggravated battery upon the victim while at his apartment at 3833 Highway 39. The same evidence is not necessary to prove the elements of these two separate offenses. Thus, defendant’s convictions 1 ¡¡afar these two offenses do not violate the constitutional prohibition against double jeopardy.
In regards to defendant’s conviction for attempted aggravated rape, the evidence necessary to find defendant guilty of attempted burglary or aggravated battery would not support conviction for attempted aggravated rape. Attempted aggravated rape requires proof of an additional element separate from the elements of either of those crimes. Specifically, a conviction for attempted aggravated rape requires a finding that defendant had the specific intent to commit an act of sexual intercourse with the person without lawful consent and that defendant did an act tending directly towards accomplishing sexual intercourse with the victim.
The victim testified that while at 115 Scarsdale Road, the unoccupied apartment, the defendant hit her and told her to do things while threatening her with the gun. She stated he told her to “Suck my anaconda” referring to his penis. He also put the gun in her mouth and threatened to kill her. Photographs taken of the unoccupied apartment were introduced at trial and depict the scene as described by the victim. Based on the victim’s testimony, her previous statements introduced at trial, and the photographic evidence, the jurors could find beyond a reasonable doubt that defendant committed the act of *202 attempted aggravated rape as a separate act and offense from aggravated burglary — unauthorized entry with the intent to commit a felony therein while armed with a dangerous weapon — at 115 Scarsdale Road.
Upon careful review of the facts, the evidence adduced at trial, and the necessary elements required to support his convictions, defendant’s convictions for attempted aggravated rape, aggravated battery and aggravated burglary did not rely on the same evidence to prove the elements of each offense, and there are 1 .^additional facts specific to each offense. Therefore, defendant’s convictions for these three offenses do not violate the constitutional prohibition against double jeopardy. We find no merit to this assignment of error.

Ineffective Assistance of Counsel

In his final assignment of error, defendant sets forth three ineffective assistance of counsel claims based on defense counsel’s failure to object to the trial court’s jury instructions. First, defendant claims that defense counsel failed to object to the trial court’s jury instructions on the elements of the offenses. Second, defendant contends that defense counsel failed to object to the trial court’s erroneous definition of criminal intent that violated his presumption of innocence. Finally, defendant contends that defense counsel failed to object to the trial court’s exclusion of two responsive verdicts on the charges of aggravated rape and aggravated battery.
We note that our Louisiana jurisprudence holds that claims of ineffective counsel are more properly raised by application for post-conviction relief filed in the trial court where a full evidentiary hearing may be conducted if warranted by the record of the case. State v. Howard, 98-0064, p. 15 (La.4/23/99), 751 So.2d 783, 802; State v. Finch, 02-2481, p. 6 (La.App. 4 Cir. 7/23/03), 853 So.2d 680, 683-84. Claims of ineffective assistance of counsel may be addressed on appeal where the record is sufficient for a full review of defendant’s claim. State v. Griffin, 99-1260, p. 3 (La.App. 4 Cir. 3/15/00), 756 So.2d 602, 604. As this Court stated in Griffin,
[¡^Ineffective assistance of counsel claims are reviewed under the two-part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail, the defendant must show both that: (1) counsel’s performance was deficient; and (2) he was prejudiced by the deficiency. Counsel’s performance is ineffective when it is shown that he made errors so serious that counsel was not functioning as the “counsel” guaranteed by the Sixth Amendment. Counsel’s deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant must show that there is a reasonable probability that, but for counsel’s deficient performance the result of the proceeding would have been different; “[a] reasonable probability is a probability sufficient to undermine confidence in the outcome.” (citations omitted)
This court has previously recognized that if an alleged error falls “within the ambit of trial strategy” it does not “establish ineffective assistance of counsel.” (citation omitted) Moreover, as “opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel’s trial decisions. Neither may an attorney’s level of representation be determined by whether a particular strategy is successful.” (citations omitted)
99-1260, pp. 3-4, 756 So.2d at 604-05.
Ineffective Assistance # 1
First, defendant claims that his defense counsel was ineffective for failing *203 to object to the trial court’s supplemental jury instruction in response to a question from the jury during deliberations. The jury submitted a question to the trial court during deliberations that read, “Do you have to have a weapon for aggravated battery?” The trial court discussed the jury’s question with all counsel at a sidebar conference. The State noted that the trial court had charged the jury originally by using the term gun, but that the definition of aggravated battery refers only to a dangerous weapon. Defense counsel restated the jury’s question as “Do you have to have a gun?” The trial court then speculated that the jury was wondering if a Ufigun has to have been physically recovered in this case to convict defendant of aggravated battery. Defense counsel and the State both agreed that, in response to the jury’s question, the trial court should reread the definition of aggravated battery to the jury.
The trial court then addressed the jury, in pertinent part:
THE COURT: Simple battery is the intentional use of force or violence upon the person of another. Aggravated battery is the intentional use of force or violence upon the person of another with a dangerous weapon. And a dangerous weapon includes any gas, liquid, or other substance or instrumentality which in the manner used is calculated or likely to produce death or great bodily harm. And thus, in order to convict the defendant of aggravated battery you must find that the defendant intentionally used force or violence upon [S.R.] and that that force or violence was inflicted with a gun or — that that the gun was the instrumentality used in a manner likely or calculated to cause death or great bodily harm. (Emphasis supplied).
Defense counsel did not object to this instruction by the court. As agreed to by both defense counsel and the State, the trial court reread the definition of aggravated battery as well as the definition of dangerous weapon. The trial court used the term gun in describing the necessary findings to find defendant guilty of aggravated battery based on the testimony presented in this case. The only testimony and evidence of a dangerous weapon presented to the jury related to the use of a gun. The facts of this case could only support a finding of guilt of aggravated battery by finding that defendant used a gun as the instrumentality likely or calculated to cause death or great bodily harm.
Defendant does not point to any specific prejudice that could have resulted from the trial court’s reading of the definition of aggravated battery and dangerous weapon and applying the elements to this case. Defendant only makes a conclusory statement that the supplemental instruction “was confusing, misleading |S7and misstated the law.” Defendant fails to indicate how he was prejudiced by the trial court’s use of the term “gun” in place of “dangerous weapon” in this manner.
As to defense counsel’s failure to object to the trial court’s supplemental instruction, we note that defense counsel actively engaged in the discussion with the trial court and the State about how to respond to the jury’s question. Further, the trial court responded to the question in a manner agreed to by defense counsel and the State. Defense counsel acted on behalf of defendant by engaging in the discussion and offering his best counsel on this issue. Thus, there is nothing to indicate that defense counsel was deficient in his representation of defendant. Even assuming that defense counsel’s failure to object to the supplemental instruction could be considered a deficient performance, defendant *204 has not shown that there is a reasonable probability that, but for defense counsel’s lack of objection, the result of the proceeding would have been different. Thus, we find no merit to defendant’s first claim of ineffective assistance of counsel.
Ineffective Assistance # 2
In his second claim of ineffective assistance of counsel, defendant asserts that defense counsel failed to object to the trial court’s use of the word “defendant” rather than “offender” when instructing the jury on criminal intent. Consequently, defendant contends that the use of the word “defendant” destroyed his presumption of innocence.
The trial court’s instruction to the jury on the definition of criminal intent, both specific and general, matches the statutory definitions within La. R.S. 14:10,[11] |ssexcept for the trial court’s use of the term “defendant” rather than the term “offender.” According to defendant, this replacement of terms diluted the presumption of innocence for the jury. Defendant argues that the use of the word “defendant” created ambiguity and mislead the jury by allowing the jury to “infer that the defendant intended the natural and probable consequences of his acts.”
Defendant acknowledges that the trial court properly instructed the jury on the defendant’s presumption of innocence during the reading of jury instructions. We note that the trial court instructed the jury on the presumption of innocence, the burden of proof, and the standard of reasonable doubt before instructing the jury on the specific charges in the indictment and on criminal intent. The trial court did not misstate the law on criminal intent. Defendant’s argument that the use of the term “defendant” in the instruction would affect his presumption of innocence is counterin-tuitive when considering the term “offender” is defined as a person who commits an illegal act whereas a “defendant” is defined as an individual accused in a court of law.[12]
Defendant’s claim that his defense counsel’s failure to object to the trial court’s instruction on criminal intent fails the test for proving the ineffectiveness of counsel. Defendant has not shown how the failure to lodge an objection to a proper statement of the law constitutes a deficient representation of defendant. Defendant has made no showing that his counsel was deficient or, even assuming a deficient performance for a failure to object here, how defendant was prejudiced as a result of defense counsel’s deficient performance. Finally, even assuming |39defense counsel objected and insisted on the use of the term “offender” in this context, defendant has not shown a reasonable probability that the result of the proceeding would have been different. We, therefore, find no merit to defendant’s second claim of ineffective assistance of counsel.

Ineffective Assistance # 3

In his third claim of ineffective assistance of counsel, defendant contends that defense counsel erred by failing to object to the trial court’s decision to exclude two responsive verdicts from the jury charges.
*205 Prior to charging the jury, the trial court informed all counsel that it would exclude two responsive verdicts from the charges, as to the charged offenses of aggravated rape and aggravated battery. The trial court gave the following explanation to counsel:
THE COURT: ... I want to put on the Record that in regard to the jury instructions, by the choice of the Court and with some discretion I’ve omitted on purpose two lesser included offenses. They’re left off because there weren’t actual facts to justify a foundation to put them before the jury.
One is an aggravated rape charge, and on the aggravated rape charge the lesser included charge of simple rape was left off because of the facts that would have to be alleged that were involved; the victim had to be drugged or incapacitated in that way. And there’s no evidence in here that the victim in this case was ever drugged. So the Court chose not to do a charge for simple rape. The facts in evidence just doesn’t suggest that.
On the aggravated battery charge, the Court deliberately left off second degree battery. And it was left off because, again, the facts alleged does not show that the victim in this case had any kind of serious injury and loss of consciousness that would justify a charge for second degree battery. So therefore as a lesser included charge that was left off.
So the Court wants to bring this to your attention that they are not responsive verdicts in this case due to the Court finding that there’s no evidence or actual evidence to support them. All right. Any objections to those two?
|4nBoth the State and defense counsel stated they had no objections to the trial court’s decision to omit the lesser responsive verdicts of simple rape and second degree battery. Defendant now contends that defense counsel’s failure to object to the trial court’s decision deprived defendant of the opportunity to lessen his sentencing exposure and resulted in verdicts that were fundamentally unfair and unreliable.
First, we address the trial court’s authority to exclude lesser responsive verdicts from the jury charge. When charging the jury, the trial court shall inform the jury on the law applicable to each offense in the indictment and as to other offenses of which the accused could be found guilty under the provisions of La. C.Cr.P. arts. 814 or 815 (setting forth the only responsive verdicts which may be rendered under indictments for particular offenses and offenses in general). La. C.Cr.P. art. 803. Pursuant to La.C.Cr.P. art. 814(A)(8) and (14), respectively, the statutory responsive verdicts for aggravated rape include simple rape and attempted simple rape; the responsive verdicts for aggravated battery include second degree battery.[13] However, La.C.Cr.P. art. 814(C) provides,
Upon motion of the state or the defendant, or on its own motion, the court shall exclude a responsive verdict listed ..., if, after all the evidence has been submitted, the evidence, viewed in a light most favorable to the state, is not *206 sufficient reasonably to permit a finding of guilty of the responsive verdict.
In arguing that the trial court was without authority to exclude the two responsive verdicts in this case, defendant cites State v. Johnson, 01-0006 (La.5/31/02), 823 So.2d 917, to support his argument. In Johnson, the Louisiana |41 Supreme Court discussed a trial court’s “limited authority” under La.C.Cr.P. art 814(C) to exclude statutory responsive verdicts listed in La.C.Cr.P. art. 814(A) “only when those verdicts are not supported by the evidence in a particular case.” Johnson, 01-0006, p. 8, 823 So.2d at 923. The court cited its prior per curiam decision in State v. Porter, 93-1106, p. 9 (La.7/5/94), 639 So.2d 1137, 1142 wherein it stated that the provision of La.C.Cr.P. art. 814(C),
only authorizes the trial court to delete a lesser offense if a verdict of guilty of the lesser offense would have to be reversed under the Jackson standard; the jury may still return a compromise verdict of a lesser offense which is supported by the evidence, even if the evidence also supports a verdict of the charged offense.
The court in Porter applied the standard of Jackson v. Virginia, supra, to determine whether the trial court erred because the evidence in the case could reasonably support a conviction for one of the excluded responsive verdicts.
In the instant case, we note that defendant does not address the issue of whether, viewing all the evidence in a light most favorable to the State, the trial court erred in concluding that the evidence was not sufficient reasonably to permit a finding of guilty of either of the excluded responsive verdicts. Assuming his trial counsel had objected to the trial court’s decision and the trial court’s exclusion of the responsive verdicts was raised on appeal as a trial court error, we would apply the standard as set forth in La.C.Cr.P. art. 814(C) and review the sufficiency of the evidence to support the lesser responsive verdicts.
We must address whether the trial court properly excluded the two responsive verdicts based on whether the evidence in this case was sufficient reasonably to support either of those verdicts. However, this issue of the trial | ^court’s exclusion of the responsive verdicts comes before us on a claim of ineffective assistance of counsel. As such, defendant must show that defense counsel’s performance was deficient and that, but for the deficient performance, there is a reasonable probability that the result of the proceeding would have been different. Defendant also does not address the issue that defense counsel’s failure to object could have been a trial strategy, and therefore could not be considered ineffective assistance of counsel. State v. Holmes, 96-9208, p. 8 (La.App. 4 Cir. 2/29/96), 670 So.2d 573, 578. Thus, after determining any trial court error, we address defense counsel’s performance in failing to object to the trial court’s decision.
On the charged offense of aggravated battery, the trial court “deliberately” excluded the responsive verdict of second degree battery. Second degree battery is defined as “a battery when the offender intentionally inflicts serious bodily injury.” La. R.S. 14:34.1(A). The statute defines “serious bodily injury” as,
bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.
La. R.S. 14:34.1(B)(3). The trial court explained that it was excluding this responsive verdict because “the facts alleged does *207 not show that the victim in this case had any kind of serious injury and loss of consciousness that would justify a charge for second degree battery.”
In State v. Helou, 02-2302 (La.10/23/03), 857 So.2d 1024, the Louisiana Supreme Court reviewed the sufficiency of the evidence and support for defendant’s conviction for second degree battery. In reversing the defendant’s conviction and entering a responsive verdict of simple battery, the court stated:
143After a careful review of LSA-R.S. 14:34.1 and the related jurisprudence, we find that in the case sub judiee, the State failed to offer any evidence of “extreme physical pain” by way of testimony from the fact witnesses. Nor do we have testimony from medical witnesses or medical records, which would prove this factor.... The record demonstrates that at trial the State’s direct examination of its witnesses completely avoided the subject of pain. We cannot infer that the loss of blood is tantamount to “extreme physical pain.” We also cannot infer that a punch in the nose, without more evidence, is sufficient to support a conviction of second degree battery.... In summary, there is no testimony that the victim lost consciousness at any time despite the victim’s “confusion” as to whether his wife rode with him in the ambulance to the hospital. There is no evidence of severe injury.... Simply put, because the jury had to infer the victim’s pain, the State failed to prove beyond a reasonable doubt that the victim, in fact, suffered “extreme physical pain” as required by the statute. Accordingly, we conclude that the evidence is insufficient to sustain the defendant’s conviction for second degree battery.
Helou, 02-2302, pp. 8-9, 857 So.2d at 1029.
In the instant case, testimony and documentary evidence — photographs and the victim’s medical records from within 24 hours of the incident — do not reveal any open, bleeding wounds, serious concussive head injuries, or loss of consciousness. Det. Harvey testified that on the night of the incident he did not see any reason to advise or send the victim to the hospital that night and that she did not exhibit signs of a concussion. Deputy Bryan, who was one of the first to arrive on scene, testified that he did not recall that the victim was bleeding or suffering any major trauma or open wound. Det. McClendon took photographs of the victim, during their interview on April 27, 2009, and testified that she observed “bruises all over” the victim and “knots all over her head.” The photographs depict bruising underneath both eyes, a bruise on her skull behind her left ear, a chipped upper front tooth, and bruising under her lip. The victim’s medical records from April 27, 2009, also reflect bruises and swelling under her eyes and behind her left ear, as well as a chipped tooth. The clinical impression stated closed head injury |44with multiple contusions. A CT scan revealed no bleeding, skull lesion or skull fracture.
In light of Louisiana jurisprudence on the sufficiency of evidence for second degree battery, viewing all the evidence submitted in this case in a light most favorable to the State, we cannot conclude that the trial court erred in finding that the evidence was not sufficient reasonably to permit a finding of guilt of second degree battery in this case. La.C.Cr.P. art. 814(C). See also State v. Clay, 05-1467 (La.App. 4 Cir. 10/4/06), 942 So.2d 563; State v. Vidaurri, 05-742 (La.App. 3 Cir. 12/30/05), 919 So.2d 803. Thus, there is no reason or showing made that defense counsel was deficient for his failure to object to the trial court’s exclusion of this responsive verdict. As it relates to the *208 excluded responsive verdict of second degree battery, we find that defendant’s claim of ineffective assistance of counsel fails to prove any deficient performance and a reasonable probability that the outcome would have been different but for such deficiency.
On the charged offense of aggravated rape, the trial court excluded the responsive verdict of simple rape, stating that the “facts in evidence just doesn’t suggest” that the victim was ever “drugged or incapacitated.”[14] The trial court reasoned that a verdict of simple rape must be supported by factual allegations that the victim was drugged or incapacitated.
Simple rape is defined as a rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the victim’s lawful consent because it is committed under one of more specified circumstances, such as:
|4fi(l) When the victim is incapable of resisting or of understanding the nature of the act by reason of a stupor or abnormal condition of mind produced by an intoxicating agent or any cause and the offender knew or should have known of the victim’s incapacity.[15]
La. R.S. 14:43(A).
In Porter, supra, the Louisiana Supreme Court concluded that it was reversible error for the trial court to exclude the responsive verdicts of simple rape and attempted simple rape on the charged offense of aggravated rape where the evidence in that case could have sufficiently supported those verdicts. The victim in the case testified that she and a group of family and friends attended a festival. While at the festival, she consumed “a few beers” and “a hurricane,”[16] although the amount of alcohol consumption was disputed by other testimony. The victim further testified that she became separated from her group and met the defendant and his companion at the festival. She stated that she accepted an invitation from them to leave the festival grounds to go purchase cheaper beer at a convenience store. She testified that she eventually became suspicious and, when the men refused to take her back to the festival, she became fearful. She claimed that she was then forcibly overtaken by the men and forced to engage in sexual intercourse with both men. In cross examination and in argument, defense counsel contended that the sexual intercourse had been consensual. After all the evidence in that case 14ñhad been submitted, and over the objection of defense counsel, the trial court granted the State’s motion, under La.C.Cr.P. art. 814(C), to exclude the statutory responsive *209 verdicts of simple rape and attempted simple rape from the charged offense of aggravated rape. Defendant was convicted of the responsive verdict of forcible rape. The Louisiana Supreme Court granted defendant’s application for certiorari “being principally concerned with the responsive verdict issue in the rape conviction.” Porter, supra, 93-1106, p. 3, 639 So.2d at 1140.
In its analysis of the sufficiency of the evidence to support a finding of guilty on either of the excluded responsive verdicts, the court stated:
A defendant may be convicted of simple rape when the victim’s capacity to resist was negated by an abnormal condition or state of mind produced by alcohol consumption. In the present case, there was evidence of alcohol consumption by the victim and of an alcohol-influenced state of mind. Although the victim denied excessive drinking and recalled the events of the ordeal, a reasonable juror could have concluded that the essential elements of simple rape had been proved. Had the jury concluded that the victim’s alcohol-influenced condition mitigated the severity of the offense and found defendant guilty of the lesser offense of simple rape on that theory, defendant could not have successfully challenged that verdict on appeal. There was evidence from which the jury might have inferred, despite the victim’s protestations of resistance, that she became intoxicated with these two young men and that they criminally took advantage of her alcohol-influenced incapacity to resist their advances effectively-
On the evidence in this case, defendant had the right to have the jury resolve in his favor any doubts created by the victim’s alcohol consumption regarding either the degree of compulsion exercised by defendant or the degree of resistance exercised by the victim and to have the jury return a verdict of guilty of simple rape (or even attempted simple rape, despite the absence of any evidence that sexual intercourse was not consummated).
Therefore, the trial court erred in granting the state’s motion, over defense objection, to delete the simple rape verdicts.
Porter, supra, 93-1106, pp. 9-12, 639 So.2d at 1142-44.
Under the facts of Porter, there was definitive testimony that the victim had consumed at least two beers and a hurricane, but the degree of alcohol 147consumption or intoxication was otherwise disputed. The Louisiana Supreme Court even noted in its analysis the victim’s “alcohol-influenced state of mind.” Id., 93-1106, p. 10, 639 So.2d at 1143.
In the instant case, unlike Porter, there was no definitive evidence that the victim had consumed any alcohol or was in an “alcohol-influenced” state of mind on the night of the attack. The victim testified that she had not been drinking alcohol that night. None of the detectives at the scene of the crime testified that the victim had been drinking, smelled of alcohol, or appeared inebriated. Defendant, in his audio-recorded statement to detectives, made the only claims that the victim had been drinking that night. He made one claim that he and the victim had been drinking, presumably together, and another claim that the victim had bought a bottle of something and went back to her apartment, but then she came to his apartment drunk. In his statement, defendant admitted he had been drinking that night, he drinks “I think a case a beer a day,” and that he was drunk the night of the incident. Other than defendant’s claims, *210 there was no definitive evidence that the victim, S.R., had consumed any alcohol that night.
However, the defense counsel argued in his closing statements that both the victim and defendant had been drinking that night. Defense counsel also cross examined the victim on her previous prescription drug use and, in closing arguments, referred to her as a “confessed drug addict.” Defense counsel urged that there was no evidence of the charged crimes in this case, but rather, “[w]hat we have is a fight between two drunken idiots.” A closing argument, however, without any direct or circumstantial evidence, cannot suffice to prove an element of an offense.
|4SA finding of guilty of simple rape must be supported by evidence that the victim was incapable of resisting or understanding the nature of the act by reason of stupor or abnormal condition of mind produced by an intoxicating agent. In reviewing the sufficiency of evidence to support a finding of guilty of simple rape, Louisiana courts consider the testimony and evidence of the victim’s incapacity by intoxication. State v. Cleveland, 12-0163, pp. 9-10 (La.App. 4 Cir. 4/10/13), 115 So.3d 578, 584-85 (victim testified that she had taken Valium in the morning, smoked marijuana in the afternoon, consumed drinks at a crawfish boil in the evening, and consumed several more at a bar; the witness who found the victim outside of the bar on the ground testified that the victim was highly intoxicated and unaware of her surroundings); State v. Krodinger, 12-0134, pp. 17-18 (La. App. 4 Cir. 2/27/13), 128 So.3d 270, 274 (victim testified that she started drinking early on the day of the incident and the investigating detective confirmed that the victim was noticeably under the influence of alcohol and/or drugs when he spoke with her minutes after the incident). In our jurisprudence, a conviction for simple rape must be supported by some evidence of the victim’s incapacitation or stupor by an intoxicating agent.
Based on our review of the facts of this case and the relevant jurisprudence, and viewing all the evidence in a light most favorable to the State, we do not find that the evidence is sufficient reasonably to permit a finding of guilt of the responsive verdict of simple rape.
As to defendant’s claim of ineffective assistance of counsel, on the basis of defense counsel’s failure to object to the trial court’s exclusion of simple rape as a responsive verdict, there is no reason or showing made that defense counsel’s inaction was in error. Moreover, beyond showing that defense counsel was ]49deficient in his representation, defendant would also have to show that the result of the proceeding would have been different absent the deficient performance. Considering that the jury in this case returned a verdict of guilty of attempted aggravated rape, rather than one of the lesser responsive verdicts of forcible rape, attempted forcible rape or oral sexual battery, defendant has made no showing that the result of the proceeding would have been different, assuming that responsive verdict had been included. Defendant fails to carry his burden to prove this third claim of ineffective assistance of counsel.
We find no merit to any of defendant’s claims in this assignment of error.
CONCLUSION
The record of the case reveals no patent errors, and we find no merit to any of defendant’s assignments of error. We affirm defendant’s convictions and consecutive sentences.
AFFIRMED.

. Defendant’s first counseled and first pro se assignments of error raise the same issue of a denial of the right to fair trial for failure to grant a motion for continuance.

. Defendant's first court appointed attorney filed a motion to withdraw as counsel stating that he was named in a federal lawsuit filed by defendant against the Plaquemines Parish Public Defender’s Office. Upon Mr. Edward McGowan's withdrawal as counsel, the public defender’s office advised the court that this case would be assigned to outside counsel. Mr. Terry Sercovich was appointed on December 20, 2010.

. Defendant's second attorney, Mr. Terry Ser-covich, filed a motion to withdraw as counsel based on his entry into the race for Sheriff of Plaquemines Parish. Upon Mr. Sercovich's withdrawal, Mr. Amos Cormier, who had served as co-counsel to Mr. Sercovich, served as substitute counsel for defendant until the court could appoint another attorney from outside the Public Defender's office.

. State v. German, unpub., 2012-0169 (La.App. 4 Cir. 2/7/12).

. In order to preserve the victim’s anonymity, only her initials will be used.

. Defendant also assigns error to the trial court’s denial of the motion for continuance. We will address that error separately.

. Supra note 3.

. The trial court’s per curiam also addresses its denial of the motion for continuance.

. To remedy a constitutional violation of double jeopardy, the Louisiana Supreme Court has held that the conviction and sentence of the less severely punishable offense should be vacated and the conviction for the more severely punishable offense should be affirmed. State ex rel. Adams v. Butler, 558 So.2d 552 (La.1990).

. We note that the bill of indictment charged defendant with the aggravated burglary of an inhabited dwelling at 115 Scarsdale Rd., but all statements and testimony from witnesses consistently indicate that the apartment at that location was unoccupied.

. La. R.S. 14:10 provides,
Criminal intent may be specific or general: (1) Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. (2) General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.

. Oxford U. Press, Oxford Dictionary of English (3 ed.2010).

. La.C.Cr.P. art. 814(A)(4) provides that the responsive verdicts for aggravated rape are as follows: Guilty; guilty of attempted aggravated rape; guilty of forcible rape; guilty of attempted forcible rape; guilty of sexual battery; guilty of simple rape; guilty of attempted simple rape; guilty of oral sexual battery; not guilty.
La.C.Cr.P. art. 814(A)(14) provides that the responsive verdicts for aggravated battery are guilty; guilty of second degree battery; guilty of simple battery; not guilty.

. The trial court also failed to instruct the jury on the statutory responsive verdicts of attempted simple rape and sexual battery. Although the trial court informed the jury that it could find defendant guilty of the lesser crime of sexual battery it failed to instruct the jury as to the elements of that offense. Defendant does not raise the omission of these responsive verdicts within his appeal or address these responsive verdicts in this assignment of error.

. La. R.S. 14:43(A)(2) provides for circumstances in which the victim, through unsoundness of mind, is temporarily or permanently incapable of understanding the nature of the act and the offender knew or should have known this. There is no evidence, particularly the testimony of the victim, to even suggest that the victim was incapable, mentally or otherwise, of understanding the nature of the act.
La. R.S. 14:43(A)(3) provides for circumstances under which a female victim submits under the belief that the person committing the act is her husband and such belief is intentionally induced. There is no evidence in this case to support a conviction for simple rape based on this circumstance.

.A well known alcoholic beverage.