831 So.2d 828 (2002)
STATE ex rel. Glen SEALS
v.
STATE of Louisiana.
No. 2000-KP-2738.
Supreme Court of Louisiana.
October 25, 2002.
*830 Paul D. Connick, Jr., District Attorney, Richard P. Ieyoub, Attorney General, Terry M. Boudreaux, Asst. District Attorney, for Applicant.
James Lohman, Nicholas J. Trenticosta, for Respondent.
TRAYLOR, J.[*]
Defendant, Glen E. Seals, was indicted for first degree murder in violation of La. Rev.Stat. 14:30. On March 1, 1993, defendant's attorney filed a "Motion for Psychiatric Evaluation," which was granted but not implemented. Shortly thereafter, defendant was tried, found guilty as charged, and sentenced to death. This court affirmed defendant's conviction and sentence. State v. Seals, 95-0305 (La.11/25/96), 684 So.2d 368. In 1998, defendant filed for and was granted post-conviction relief. The district court vacated the defendant's conviction and sentence and ordered a new trial. Upon the state's application, we granted certiorari to determine whether a retrospective determination of defendant's capacity to stand trial may be made from the evidence in the record.

FACTS AND PROCEDURAL HISTORY
On August 15, 1991, a Jefferson Parish Grand Jury indicted Glen E. Seals for the first degree murder of a cab driver during the commission of an armed robbery, in violation of La.Rev.Stat. 14:30. On March 1, 1993, Glenn Woods, defendant's attorney, filed a "Motion for Psychiatric Evaluation," requesting the court to appoint "a psychiatrist" to evaluate the defendant to determine whether he was "competent to stand trial and to determine his sanity at the time of the commission of the alleged offense."[1] Woods's motion did not designate a psychiatrist to be appointed. The trial judge signed the order to appoint a psychiatrist, however, the defendant was never examined, the order was not implemented, and the court made no determination regarding the defendant's competency.
In 1993, defendant was tried and found guilty as charged by a jury of his peers. After the guilt phase of trial concluded, the same jury then considered evidence presented at the sentencing phase of the proceedings. Having unanimously concluded that the state proved the aggravating circumstance of commission of murder during the perpetration of an armed robbery, the twelve members of the jury imposed the death sentence on defendant. This court *831 affirmed defendant's conviction and sentence. State v. Seals, 95-0305 (La.11/25/96), 684 So.2d 368.
In 1998, defendant filed an application for post-conviction relief.[2] Several grounds for relief were requested, including, inter alia: a Brady claim that the state withheld exculpatory evidence, Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); a Napue/Agurs claim that the state presented false testimony; an ineffective assistance of counsel claim concerning both the guilt and penalty phases of trial, Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); and the instant Nomey claim asserting a due process violation for failure to conduct a competency examination of the defendant after it was ordered by the trial court. The district court conducted hearings on the Nomey claim and held the other claims in abeyance pending a final disposition, State v. Nomey, 613 So.2d 157 (La.1993).
The district court held a series of hearings to determine if defendant's request for the appointment of a psychiatrist was bona fide, made in good faith, and whether a meaningful retrospective evaluation of defendant's competency could be made under Nomey and Snyder. Over the course of several hearings, the court received testimony from former defense attorney Glenn Woods, lead trial counsel Martin Regan, and psychiatry experts Richard Richoux and Debra Deprato; oral arguments; and written memoranda from the parties. Throughout these proceedings, the state argued that the defendant was competent as evidenced by his lengthy trial testimony.
The state argues that the instant motion did nothing to rebut the legal presumption under La.Rev.Stat. 15:432 that the defendant was competent to proceed to trial. The absence of any such allegation is explained by the testimony of Glenn Woods, who stated that his purpose in filing the motion was to collect mitigation evidence to use in the penalty phase of trial. He stated that he wanted medical, psychiatric, social skills, background, and education information to present to the jury in mitigation.
The defense argued that the testimony of Glenn Woods and Dr. Richoux did not further the state's claims. Woods reported little recollection of working on the defendant's case. Dr. Richoux indicated that he could make a determination nunc pro tunc, but acknowledged that his brief consultations with defendant did not allow him to glean the kind of information he would obtain in a competency assessment. Dr. Richard Richoux conducted brief interviews of defendant, each lasting between five and fifteen minutes, while defendant was on prison suicide watch, but never examined the defendant for the purpose of a competency evaluation. Dr. Richoux agreed that a competency evaluation was certainly different from the visits he conducted with the defendant. Without firsthand knowledge of the defendant's mental condition, Dr. Richoux's testimony drew extensively from his retrospective reading of defendant's trial testimony. Furthermore, Dr. DePrado concluded that no retroactive determination was possible given the brevity of the consultations in 1993 and the lack of other information. The defendant contends that the state provided only scant evidence and has failed to *832 meet its burden of proving that there was enough evidence to make a retroactive determination.
After finding that it could not retrospectively determine the defendant's competence to stand trial, the district court then granted post conviction relief. In its oral reasons for judgment, the court stated in pertinent part:
After having those hearings, the Court finds that the information available to the doctors for a retroactive sanity [determination] is extremely small, extremely slight. It isthe "Schneider" case which indicated that retroactive sanity commissionsdeterminations of competency were not favored. So in order to overcome that, I think you would have to have some substantial material available.
In the "Schneider" [sic] case, there was an abundance of material available. There had also been a previous sanity commission. There were interviews by a number of psychologists and/or psychiatrists. There were medical records.
In this case, there is no such thing. We had three visits, I think, by Dr. Richoux, to visit Mr. Seals on suicide watch to determine whether he was a suicide risk and he did not do a complete work-up like he would do.
Dr. DePrado said she would need a lot more material before she could make any ruling or she would feel comfortable with being able to determine the competency.

The court finds as a matter of fact, based on the hearings, that sufficient material is not available to allow a retroactive competency hearing to be held. (Emphasis added)
The district court vacated the defendant's conviction and sentence and ordered a new trial. Upon direct appeal, we granted the state's application to determine whether a retrospective determination of defendant's capacity to stand trial may be made from the evidence in the record.

LAW AND DISCUSSION
At the outset, we note the longstanding precept that a defendant does not have an absolute right to the appointment of a sanity commission simply upon request. State v. Volson, 352 So.2d 1293 (La.1977). A trial judge is only required to order a mental examination of a defendant when there are reasonable grounds to doubt the defendant's mental capacity to proceed. Id.; La.Code Crim. Proc. art. 643. It is well established that "reasonable grounds" exist where one should reasonably doubt the defendant's capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense. Drope v. Missouri, 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); Snyder at 851. To determine a defendant's capacity, we are first guided by La.Code Crim. Proc. arts. 642, 643, and 647.
As a general matter, La.Code Crim. Proc. art. 642 allows "[t]he defendant's mental incapacity to proceed [to] be raised at any time by the defense, the district attorney, or the court." The Article additionally requires that "[w]hen the question of the defendant's mental incapacity to proceed is raised, there shall be no further steps in the criminal prosecution ... until the defendant is found to have the mental capacity to proceed." Id. Next, Article 643 provides in pertinent part, "The court shall order a mental examination of the defendant when it has reasonable ground to doubt the defendant's mental capacity to proceed...." Last, if a defendant's mental incapacity has been properly raised, the proceedings can only continue under La. Code Crim. Proc. art. 647 which provides:

*833 The issue of the defendant's mental capacity to proceed shall be determined by the court in a contradictory hearing. The report of the sanity commission is admissible in evidence at the hearing, and members of the sanity commission may be called as witnesses by the court, the defense, or the district attorney....
This protection, however, is not to say that every time a defendant feigns incapacity the court must order a full-blown sanity commission. In State v. Berry, 391 So.2d 406, 411 (La.1980), we firmly held that the trial court is granted great discretion in determining if a defendant should be afforded a mental examination to determine capacity. Indeed, where a trial judge finds enough evidence to doubt a defendant's capacity, the court may order the defendant be examined by a single psychiatrist to satisfy requirements of La. Code Crim. Proc. art. 643. There is no need for a sanity commission to be appointed each time capacity of a defendant is questioned.
That being said, questions regarding a defendant's capacity must be deemed by the court to be bona fide and in good faith before a court will consider if there are "reasonable grounds" to doubt capacity. Where there is a bona fide question raised regarding a defendant's capacity, the failure to observe procedures to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial. Drope at 172, 95 S.Ct. 896; Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); State v. Rogers, 419 So.2d 840 (La.1982). At this point, the failure to resolve the issue of a defendant's capacity to proceed may result in nullification of the conviction and sentence under State v. Nomey, 613 So.2d 157, 161-62 (La.1993), or a nunc pro tunc hearing to determine competency retrospectively under State v. Snyder, 98-1078 (La.4/14/99), 750 So.2d 832.

Nunc Pro Tunc Hearing
In certain instances, a nunc pro tunc hearing on the issue of competency is appropriate "if a meaningful inquiry into the defendant's competency" may still be had. Snyder at 854. In such cases, the trial court is again vested with the discretion of making this decision as it "is in the best position" to do so. Id. at 855. This determination must be decided on a case-by-case basis, under the guidance of Nomey, Snyder, and their progeny. Id. The state bears the burden in the nunc pro tunc hearing to provide sufficient evidence for the court to make a rational decision. Id. Thus, we must determine first if a meaningful retrospective competency hearing can be held in the instant case or whether the only option to remedy the situation is nullification.
The allowance of a determination nunc pro tunc in cases such as these was first recognized in State v. Snyder. In Snyder, the record gave no basis upon which a reviewing court could determine if the trial court properly inquired into the defendant's competence. Factors which a court may consider to conduct a proper inquiry are known as the Bennett factors and include:
[W]hether [t]he [defendant] is able to recall and relate facts pertaining to his actions and whereabouts at certain times; whether he is able to assist counsel in locating and examining relevant witnesses; whether he is able to maintain a consistent defense; whether he is able to listen to the testimony of witnesses and inform his lawyer of any distortions or misstatements; whether he has the ability to make simple decisions in response to well-explained alternatives; whether, if necessary to defense *834 strategy, he is capable of testifying in his own defense; and to what extent, if any, his mental condition is apt to deteriorate under the stress of trial.
State v. Bennett, 345 So.2d 1129, 1137 (La. 1977). This court, in reviewing the record in Snyder, found no evidence that the trial court considered any of the Bennett factors after defendant's competency was raised. However, in Snyder, there was considerable evidence, both psychiatric and lay testimony, regarding the defendant's state of mind. In contrast, there was no affirmative evidence that the trial judge in the instant case conducted any investigation into defense allegations other than signing the order for the appointment of a psychiatrist.
In State v. Franks, 391 So.2d 1133 (La. 1980), State v. Berry, 391 So.2d 406 (La. 1980), and State v. Hicks, 286 So.2d 331, 333 (La.1973), the trial courts granted the defendants psychiatric examinations, which fell short of a request for a full-blown sanity commission, and ruled on the merits of whether a reasonable ground existed for appointment of a sanity commission. The order in the instant case was never seen to fruition as in Franks, Berry, and Hicks.
We find the rule of Article 642 is broad enough to encompass situations in which the trial court may appoint a mental health expert (such as Franks and Berry) as well as those occasions in which the court must appoint a sanity commission because reasonable grounds exist for doubting the defendant's competency. Having signed the motion, the court clearly erred as a matter of law under La.Code Crim. Proc. art. 642 by proceeding to trial without making any assessment of defendant's capacity to proceed. Finding that the prosecution of the instant case should have been stayed to properly determine defendant's capacity, we now turn to a determination of whether the exception to nullification applies in this case.
In order for the exception to nullification to be applicable, we must find that a meaningful retrospective determination of competence can now be made. The evidence is so scant that the district court correctly ruled that it could not cure the error by ordering a nunc pro tunc determination because, in the instant case, we can only guess from the scant evidence in the record that the trial judge found a bona fide issue regarding defendant's Motion for Psychiatric Evaluation. We agree with the defendant's argument that a meaningful determination of defendant's competence cannot now be made.

Nullification
Significantly, Nomey and the present case differ in some factual respects but also raise significantly similar legal issues. In Nomey, the defense explicitly petitioned to have a sanity commission appointed under the authority of La.Code Crim. Proc. art. 643, and the trial court granted the motion, appointing the requisite two doctors to examine the defendant. As we noted in Nomey, since the trial court ordered the examination, it must have found reasonable grounds upon which defendant's mental capacity to proceed was doubted. However, in the instant case, the trial court did not appoint a sanity commission but rather ordered an Article 643 preliminary inquiry before reaching the "reasonable grounds" issue. A trial court's preliminary inquiry of this nature does not constitute the unilateral conducting of a sanity hearing for the purposes of La.Code Crim. Proc. art. 646. State v. Martin, 00-0489 (La.9/22/00), 769 So.2d 1168, 1169-70 (per curiam). Even though the present case does not present a situation where a sanity commission was either explicitly requested or deemed necessary *835 by the trial court, Nomey applies if a meaningful retrospective determination of defendant's capacity cannot be made from the record.
The district court on the instant motion for post conviction relief found insufficient evidence to allow a retroactive competency hearing. We agree with the district court's determination that the facts of the instant case do not allow a retroactive competency hearing. Accordingly, we affirm the judgment of the district court.

CONCLUSION
For the reasons assigned, we conclude that under the facts of this case, the district court correctly found that it cannot be retrospectively determined whether the defendant possessed the mental capacity to stand trial. Accordingly, we affirm the judgment of the district court which vacated the defendant's conviction and sentence and ordered a new trial. The case is remanded to the district court for new trial.

DECREE
AFFIRMED AND REMANDED FOR NEW TRIAL.
VICTORY, J., concurs.
NOTES
[*] Retired Judge Thomas C. Wicker, Jr., assigned as Associate Justice ad hoc, sitting for Chief Justice Pascal F. Calogero, Jr., recused.
[1] At the time, Glenn Woods was one of four defense attorneys retained by the defendant. Woods filed the Motion for Psychiatric Evaluation but left his employment to return to his previous position at the District Attorney's Office before trial commenced. Three attorneys remained on the defense team.
[2] The initial application was filed April 3, 1998 with supplements filed July 13, 1999 and October 25, 1999.