**STATE OF LOUISIANA**      \*      **NO. 2024-KA-0748**

**VERSUS**      \*

                 **COURT OF APPEAL**

**KENNETH AUGUSTINE**      \*

                 **FOURTH CIRCUIT**

                \*

                 **STATE OF LOUISIANA**

              **\* \* \* \* \* \* \***

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 544-264, SECTION "C"
Honorable Benedict J. Willard, Judge
**\* \* \* \* \* \***
**Judge Dale N. Atkins**
**\* \* \* \* \* \***

(Court composed of Chief Judge Roland L. Belsome, Judge Paula A. Brown, Judge Dale N. Atkins)

Holli Herrle-Castillo
LOUISIANA APPELLATE PROJECT
P. O. Box 2333
Marrero, LA 70073

      COUNSEL FOR DEFENDANT/APPELLANT, Kenneth Augustine

Jason R. Williams, District Attorney
Brad Scott, Assistant District Attorney, Chief of Appeals
Corbin Bates, Assistant District Attorney
PARISH OF ORLEANS
619 South White Street
New Orleans, LA 70119

      COUNSEL FOR APPELLEE, State of Louisiana

                       **REMANDED WITH INSTRUCTIONS**
                              **DECEMBER 15, 2025**

DNA

RLB

PAB

This is a criminal case. Appellant, Kenneth Augustine ("Mr. Augustine"), appeals his convictions for second degree murder and obstruction of justice. Appellee is the State of Louisiana ("State"). For the following reasons, we remand this matter for further proceedings consistent with this Opinion.

**RELEVANT PROCEDURAL HISTORY**

On January 24, 2019, by bill of indictment, the State charged Mr. Augustine with two counts of second degree murder, in violation of La. R.S. 14:30.1; two counts of obstruction of justice, in violation of La. R.S. 14:130.1, in connection with the commission of second degree murder; and one count of possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1. Mr. Augustine pled not guilty to all of the charges.

**First Motion to Appoint Sanity Commission**

Thereafter, on June 21, 2022, Mr. Augustine filed a "Motion to Appoint [a] Sanity Commission," which the district court granted, and the sanity commission issued its report on August 12, 2022. Then, on September 15, 2022, the district court held a competency hearing and ruled Mr. Augustine incompetent to proceed

to trial. The district court remanded Mr. Augustine to Eastern Louisiana Mental Health System ("ELMHS") for treatment.

Subsequently, the State submitted an August 15, 2023 "Competency Restoration Status Report" ("Report") to the district court regarding Mr. Augustine's treatment. In the Report, the State included a July 11, 2023 progress note authored by Dr. Sanket Vyas, M.D. ("Dr. Vyas"), of the ELMHS. Dr. Vyas' progress note listed the diagnostic impressions for Mr. Augustine as schizoaffective disorder, antisocial personality traits, and substance use disorder. Additionally, Dr. Vyas' progress report listed a plan to "refer [Mr. Augustine] to psychology for a malingering examination as he does appear to be exaggerating his deficits as well as his symptoms despite being on medication."

On November 9, 2023, the district court held a mental competency hearing. When counsel for Mr. Augustine asked Dr. Myrline Belzince ("Dr. Belzince"), a forensic psychiatrist, whether it was her "appreciation that even though [Dr. Vyas' Report] include[d] malingering, [Dr. Vyas] also diagnosed Mr. Augustine with a serious mental illness [i.e., schizoaffective disorder]," she responded, "Yes. The two are not mutually exclusive." Dr. Belzince answered affirmatively when asked whether Mr. Augustine might decompensate if he stopped taking medication and if he had a change in environment, i.e., if he moved from the ELMHS to jail. Dr. Janet Johnson ("Dr. Johnson") also testified at the hearing, stating "[Mr. Augustine] has a serious mental illness, and so because of that, he is at an increased risk of decompensation with stress." Nonetheless, both doctors opined that Mr. Augustine was competent to proceed to trial. Following the hearing, the district court deemed Mr. Augustine competent.

2

## Second Motion to Appoint Sanity Commission

Eventually, the district court set the trial in this matter for May 6, 2024. However, on that day, the defendant filed several motions, including a motion to continue trial, which the district court granted. The district court reset trial to May 13, 2024, with a pretrial conference scheduled for May 7, 2024. In pertinent part, on May 6, 2024, Mr. Augustine also filed another "Motion to Appoint a Sanity Commission" ("Second Motion to Appoint"). Therein, counsel for Mr. Augustine noted the district court previously found Mr. Augustine incompetent; recounted that the Report listed Mr. Augustine as suffering from schizoaffective disorder; and reiterated the medical testimony that Mr. Augustine was at risk of decompensating. Further, in the Second Motion to Appoint, counsel for Mr. Augustine provided the following new reasons for the filing of the Motion:

6. Mr. Augustine committed an act where he physically harmed himself on Tuesday, April 30, 2024. This act required that Mr. Augustine be brought to the hospital that evening.

7. On Wednesday, May 1, 2024, Mr. Augustine came to court with a cast on his leg and needed to use a walker, and counsel attempted to raise competency at that time.

The district court did not sign the order attached to the Second Motion to Appoint.[1]

The district court continued the May 7, 2024 pretrial conference by one day; and, at the pretrial conference on May 8, 2024, the district court set a competency hearing for May 9, 2024. The record establishes that on the date of the scheduled competency hearing, May 9, 2024, Mr. Augustine was not transported to court. Specifically, the minute entry stated that "[Mr. Augustine] is in the custody of the sheriff and was not brought into open court. [Mr. Augustine] was not on jail list."

---

[1] Curiously, in addition to listing the pretrial conference date and the rescheduled trial date, the district court's May 6, 2024 minute entry also stated that the district court set a mental competency hearing in this matter for May 16, 2024, i.e., a date after the rescheduled trial date.

3

The appellate record does not reflect that the district court ever reset the competency hearing; that Mr. Augustine lodged an objection to the district court's failure to reset the competency hearing; and that the district court ever ruled on Mr. Augustine's Second Motion to Appoint.

## Convictions and Sentences

Ultimately, jury selection commenced on May 14, 2024, and on May 17, 2024, the jury returned guilty verdicts on all counts. On May 20, 2024, Mr. Augustine filed a "Motion for New Trial"; a "Motion for Post-Verdict Judgment of Acquittal"; and a "Motion for Arrest of Judgment for Convictions of Obstruction of Justice." The district court denied all three of Mr. Augustine's motions. That same day, May 20, 2024, the district court sentenced Mr. Augustine to life in prison without the benefit of probation, parole, or suspension of sentence for the two second degree murder convictions; forty years in prison each on the two obstruction of justice convictions; and twenty years in prison for the felon in possession of a firearm conviction. The district court ordered all sentences to run concurrently with credit for time served. Thereafter, Mr. Augustine timely appealed to this Court.

## ASSIGNMENTS OF ERROR

On appeal, Mr. Augustine asserts four assignments of error:

1.     The evidence was insufficient to uphold the convictions for second degree murder and obstruction of justice.

2.     The [district] court erred in denying the defense motion to continue.

3.     The [district] court erred in failing to hold the requested competency hearing.

4.     The [district] court erred in overruling the defense objections during rebuttal close.

Because we find resolution of this appeal turns on Mr. Augustine's third assignment of error, which constitutes a threshold issue that impacts the validity of the district court proceedings, our discussion will focus on same. Before turning to our discussion, however, we next delineate our errors patent review.

**ERRORS PATENT REVIEW**

In accordance with La. C.Cr.P. art. 920, we review all criminal appeals for errors patent. An error patent is one "that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." La. C.Cr.P. art. 920(2). We have reviewed the pleadings and proceedings in this record and find that there is an error patent. The error patent relates to the issue raised by Mr. Augustine in his third assignment of error, so we will discuss it below. *See State v. Pullen*, 2019-4, p. 6 (La. App. 5 Cir. 8/7/19), 279 So.3d 443, 448 (decreeing it an error patent that the record contained no judgment regarding defendant's competency to stand trial after the defendant filed a motion raising the issue of his competency).

**DISCUSSION**

As quoted above, Mr. Augustine asserts in this third assignment of error that the district court erred in failing to hold his requested competency hearing. According to Mr. Augustine, by failing to hold his requested competency hearing, the district court also failed "to observe procedures adequate to protect [his] right not to be tried or convicted while incompetent to stand trial," thereby "depriv[ing] him of his due process right to a fair trial" under the Fourteenth Amendment to the United States Constitution. Mr. Augustine argues that this Court should vacate his convictions and sentences because of this violation of his Fourteenth Amendment

rights. In support of his position, Mr. Augustine cites to *State v. Perkins*, 2000-9 (La. App. 5 Cir. 5/17/00), 759 So.2d 334.

Countering, the State contends that "[a]lthough [Mr. Augustine] raised competency leading to his trial date, a defendant is not entitled to be evaluated by a sanity commission simply because competency is raised." Rather, according to the State, a defendant is entitled to evaluation by a sanity commission only if the district court first assigns a sanity commission to evaluate him as was the case in *Perkins*, 2000-9, 759 So.2d 334. In the matter *sub judice*, by contrast, the State explains that when Mr. Augustine raised the competency issue again right before trial, the district court did not assign a sanity commission but rather "relied on the previously issued [R]eport" and "found that [Mr. Augustine] was both competent and a malingerer," such that "[t]he [district] court properly rejected [Mr. Augustine]'s attempt to raise competency to avoid trial." The State contends "[t]his Court should not disturb the [district] court's decision because the determination of [a] defendant's competency is a fact question to be determined based on the sound discretion of the [district] court."

As explained by the Louisiana Fifth Circuit Court of Appeal ("Fifth Circuit"), "[a] criminal defendant has a constitutional right not to be tried while legally incompetent." *State v. Pullen*, 2019-4, p. 6 (La. App. 5 Cir. 8/7/19), 279 So.3d 443, 449 (citing *State v. Carmouche*, 2001-0405, p. 29 (La. 5/14/02), 872 So.2d 1020, 1041). Stated differently, "a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel[,] and to assist in preparing his defense may not be subject to trial." *State v. Nomey*, 613 So.2d 157, 161 (La. 1993) (citing *Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 903, 43 L.Ed.2d 103 (1975)).

6

Delineating "[h]ow mental incapacity is raised" and the effect of doing so, La. C.Cr.P. art. 642 provides:

> The defendant's mental incapacity to proceed may be raised at any time by the defense, the district attorney, or the court. When the question of the defendant's mental incapacity to proceed is raised, *there shall be no further steps in the criminal prosecution*, except the institution of prosecution, *until the defendant is found to have the mental capacity to proceed*.

(Emphasis added). That is, "[o]nce the question of the defendant's mental capacity to proceed is raised, La.C.Cr.P. art. 642 mandates a stay in the prosecution until the defendant is found to have the mental capacity to proceed." *Perkins*, 2000-9, p. 5, 759 So.2d at 337.

One of the official revision comments to La. C.Cr.P. art. 642 explains the purpose behind the Article:

> When the question of the defendant's mental capacity to proceed has been raised, all proceedings in the case are stayed until that issue is determined, thus making sure that no action prejudicial to the defendant will be taken until the defendant's capacity to understand the nature of the proceedings and to assist in his defense has been established.

La. C.Cr.P. art. 642, Official Revision Comment (b). *See also Perkins*, 2000-9, pp. 5-6, 759 So.2d at 337 (citing *State v. Calais*, 615 So.2d 4, 5 (La. App. 3d Cir. 1993)). As this Court has held, "[a] district court's failure to follow statutory provisions in determining defendant's mental capacity to proceed violates a defendant's due process rights." *State v. Jones*, 2019-0440, p. 13 (La. App. 4 Cir. 8/5/20), 305 So.3d 919, 926 (citing *State v. Cretian*, 2017-0777, p. 9 (La. App. 4 Cir. 1/24/18), 238 So.3d 473, 478).

If the district court "has reasonable ground to doubt the defendant's mental capacity to proceed," then "[t]he court shall order a mental examination of the defendant." La. C.Cr.P. art. 643. Thereafter, "[w]ithin seven days after a mental

7

examination is ordered, the [district] court shall appoint a sanity commission to examine and report upon the mental condition of the defendant." La. C.Cr.P. art. 644(A). However, as the Louisiana Third Circuit Court of Appeal has explained, "[i]t is only when a '*bona fide* question [is] raised regarding a defendant's capacity, [that] the failure to observe procedures to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial.'" *State v. McCurley*, 2015-24, p. 5 (La. App. 3 Cir. 6/3/15), 165 So.3d 1232, 1235 (second and third alterations in original) (quoting *State ex rel. Seals v. State*, 2000-2738, p. 6 (La. 10/25/02), 831 So.2d 828, 833; citing *State v. Rogers*, 419 So.2d 840, 844 (La. 1982)). The defendant bears the burden of "establish[ing] that he lacks the capacity to understand the proceedings against him and that he is unable to assist with his defense in a meaningful way." *State v. German*, 2012-1293, pp. 18-19 (La. App. 4 Cir. 1/22/14), 133 So.3d 179, 194 (citing *State v. Bickham*, 404 So.2d 929, 934 (La. 1981)). The defendant "cannot rest on mere allegations without supporting evidence to show that [he] is unable to understand the nature of the proceedings." *Id.* at p. 19, 133 So.3d at 194 (citing *Bickham*, 404 So.2d at 935).

As such, "the ordering of a mental examination is not guaranteed." *McCurley*, 2015-24, p. 4, 165 So.3d at 1235 (citing *State v. Anderson*, 2006-2987, p. 21 (La. 9/9/08), 996 So.2d 973, 992). Rather, as this Court has held, "[t]he determination of whether there are reasonable grounds to doubt a defendant's mental capacity and to order a mental examination lies within the discretion of the [district] court[,] and the [district] court's determination will not be set aside absent a clear abuse of discretion." *German*, 2012-1293, p. 19, 133 So.3d at 194 (first citing *Bickham*, 404 So.2d at 934; and then citing *State v. Gauthier*, 2007-0743, p.

8

10 (La. App. 4 Cir. 3/12/08), 978 So.2d 1161, 1168). If the district "court does not find any reasonable ground to doubt [the defendant's] present capacity, the proceedings may continue." *McCurley*, 2015-24, p. 4, 165 So.3d at 1235 (citation omitted).

Nonetheless, the language of La. C.Cr.P. art. 642 is clear and compulsory. "Once the question of the defendant's mental capacity to proceed is raised, La. C.Cr.P. art. 642 mandates a stay in the prosecution *until the defendant is found to have the mental capacity to proceed.*" *Perkins*, 2000-9, p. 5, 759 So.2d at 337 (emphasis added). It is axiomatic from the text of La. C.Cr.P. art. 642 that the district court must rule one way or another regarding the defendant's mental capacity before proceeding. That is, the district court can deem the defendant competent and move forward with the proceedings or order a mental examination to further examine the competency issue, but the district court "clearly err[s] as a matter of law under [La. C.Cr.P. art. 642] by [going forward with the] trial without making any assessment of [the] defendant's capacity to proceed." *Seals*, 2000-2738, p. 8, 831 So.2d at 834. Moreover, such ruling on the defendant's capacity to proceed must be evident in the record on appeal before the appellate court proceeds with the merits of the appeal. *See Pullen*, 2019-4, pp. 5-6, 279 So.3d at 448-49 (declining to consider the merits of the defendant's assignments of error after "find[ing] considerable error in the sanity commission procedures conducted by the district court" in light of the lack of anything in the record establishing the district court "rendered a judgment as to [the] defendant's competency to stand trial"). *See also State v. Johnson*, 49,848, p. 5 (La. App. 2 Cir. 5/20/15), 166 So.3d 1170, 1174 (holding that if "the record does not reflect . . . that [the] defendant's

9

competency was ever determined by the [district] court prior to his guilty plea being accepted, the guilty plea is invalid" (citations omitted)).

If the district court "fail[ed] to resolve the issue of [the] defendant's capacity to proceed" or the appellate record does not establish the district court resolved the issue of the defendant's capacity, this "may result in nullification of the conviction and sentence under . . . *Nomey*, 613 So.2d [at] 161-62 . . ., or a *nunc pro tunc* hearing to determine competency retrospectively under *State v. Snyder*, [19]98-1078 (La. 4/14/99), 750 So.2d 832." *Seals*, 2000-2738, p. 6, 831 So.2d at 833. In this latter regard, a *nunc pro tunc* hearing constitutes "an exception to immediate nullification [as] . . . recognized by the Louisiana Supreme Court." *State v. Matthews*, 2000-2115, p. 17 (La. App. 1 Cir. 9/28/01), 809 So.2d 1002, 1016 (citations omitted).

"In order for the exception to nullification to be applicable," a *nunc pro tunc* hearing serving as "a meaningful retrospective determination of competence" must be possible. *Seals*, 2000-2738, p. 8, 831 So.2d at 834. The meaningfulness of the *nunc pro tunc* hearing is important for ensuring "the defendant's due process rights are adequately protected." *Pullen*, 2019-4, pp. 7-8, 279 So.3d at 450 (citing *Reynolds v. Norris*, 86 F.3d 796, 802 (8th Cir. 1996)). If "the state of the record, together with such additional evidence as may be relevant and available, permits an accurate assessment of the defendant's condition at the time of the original . . . proceedings," then "[a] meaningful determination is possible." *Id.* at p. 8, 279 So.3d at 450 (citation omitted).

The district court "is in the best position" to determine "'if a meaningful inquiry into the defendant's competency' may still be had," so the district court is "vested with the discretion [to make] this decision." *Seals*, 2000-2738, p. 6, 831

So.2d at 833 (quoting *Snyder*, 1998-1078, pp. 30-31, 750 So.2d at 854-55). *See also Matthews*, 2000-2115, p. 17, 809 So.3d at 1016 (holding "[t]he [district] court is in the best position to determine whether it can make a retrospective determination of defendant's competency during his trial and sentencing" (quoting *Snyder*, 1998-1078, pp. 30-31, 750 So.2d at 855)). "This determination" of whether a meaningful retroactive competency hearing can be held "must be decided on a case-by-case basis, under the guidance of *Nomey*, [613 So.2d 157,] *Snyder*, [1998-1078, 750 So.2d 832,] and their progeny." *Seals*, 2000-2738, p. 6, 831 So.2d at 833 (citation omitted).

For example, in *Snyder*, the Louisiana Supreme Court ("Supreme Court") listed some relevant factors for consideration as: the passage of time; the availability of witnesses; and the existence of evidence on the record about the defendant's mental state at the time of the trial. 1998-1078, p. 31, 750 So.2d at 855 (citing *Miller v. Dugger*, 838 F.2d 1530 (11th Cir. 1988)). Further, in *Snyder*, the Supreme Court noted the "taking of additional testimony and evidence, including medical testimony relating to defendant's mental condition during that time prior to trial when he was allegedly unstabilized . . . and the records of [any] examining physicians made during that time period" might be necessary to assist the district court in determining whether the defendant was competent. *Id.* (citing *United States v. Renfroe*, 825 F.2d 763, 767 (3rd Cir. 1987)). Additionally, in *Seals*, the Supreme Court listed factors for consideration as:

> [W]hether [t]he [defendant] is able to recall and relate facts pertaining to his actions and whereabouts at certain times; whether he is able to assist counsel in locating and examining relevant witnesses; whether he is able to maintain a consistent defense; whether he is able to listen to the testimony of witnesses and inform his lawyer of any distortions or misstatements; whether he has the ability to make simple decisions in response to well-explained alternatives; whether, if necessary to

defense strategy, he is capable of testifying in his own defense; and to what extent, if any, his mental condition is apt to deteriorate under the stress of trial.

2000-2738, p. 7, 831 So.2d at 833-34 (alterations in original) (quoting *State v. Bennett*, 345 So.2d 1129, 1137 (La. 1977)). In terms of the burden of proof at the *nunc pro tunc* hearing, "[t]he State bears the burden of providing sufficient evidence for the court to make a rational decision." *Pullen*, 2019-4, p. 8, 279 So.3d at 450 (citing *Seals*, 2000-2738, pp. 6-7, 831 So.2d at 834).

Turning to the matter *sub judice*, we agree with the State that "a defendant is not entitled to be evaluated by a sanity commission simply because competency is raised." As stated previously, under La. C.Cr.P. art. 642 and the jurisprudence interpreting it, if the district "court does not find any reasonable ground to doubt [the defendant's] present capacity, the proceedings may continue." *McCurley*, 2015-24, p. 4, 165 So.3d at 1235 (citation omitted). The problem in this matter, however, is that there is no transcript of a hearing, ruling in the record, or minute entry that indicates the district court rendered a judgment as to Mr. Augustine's competency to stand trial after his counsel filed the Second Motion to Appoint and raised *bona fide* questions about his competency in light of a recent incident of self-harm. Though the State contends the district court "relied on the previously issued [R]eport" and "found that [Mr. Augustine] was both competent and a malingerer," such that "[t]he [district] court properly rejected [Mr. Augustine]'s attempt to raise competency to avoid trial" with his Second Motion to Appoint, the State does not provide a record citation in its brief that supports this assertion. When Mr. Augustine filed his Second Motion to Appoint, he raised the issue of his competency anew, thus requiring the district court to make a specific ruling on the record regarding Mr. Augustine's competency at that time. As this Court has

previously explained, "[a]s an appellate court, we are a court of record and can only review what is contained in the record on review." *State v. Crowther*, 2024-0625, p. 15 (La. App. 4 Cir. 1/31/25), 408 So.3d 277, 287-88 (internal quotation marks omitted) (quoting *JoAnn Place v. Ricard*, 2022-0456, p. 12 (La. App. 4 Cir. 12/27/22), 356 So.3d 518, 527). Thus, we cannot assume, as the State suggests, that the district court ruled Mr. Augustine competent after the Second Motion to Appoint when nothing in the record actually supports such a finding.

Nonetheless, we disagree with Mr. Augustine that vacatur of his convictions and sentences is the appropriate course of action at this juncture. Rather, in light of the above-discussed jurisprudence, we remand this matter to the district court for the sole purpose of determining whether a *nunc pro tunc* competency hearing is possible. If the district court believes that it is possible to determine Mr. Augustine's competency at the time of his trial, the district court is directed to hold an evidentiary hearing. If the district court determines Mr. Augustine was competent at the time of his trial, no new trial is required. If the district court determines Mr. Augustine was incompetent at the time of trial or determines the inquiry into competency is impossible, Mr. Augustine is entitled to a new trial. *Matthews*, 2000-2115, p. 17, 809 So.2d at 1016 (citing *Snyder*, 1998-1078, pp. 31-32 & 43, 750 So.2d at 855-56 & 863). Mr. Augustine's right to appeal is reserved. *Id.* (citing *Snyder*, 1998-1078, p. 43, 750 So.2d at 863).

The district court shall make the determination of whether a *nunc pro tunc* competency hearing is possible and inform this Court of its determination within thirty days of this Opinion. In light of our decision to remand this matter, we pretermit discussion of Mr. Augustine's first, second, and fourth assignments of error.

## DECREE

For the foregoing reasons, we remand this matter for further proceedings consistent with this Opinion.

**REMANDED WITH INSTRUCTIONS**